547 S.E.2d 256

**SHEETZ, INC., Plaintiff,**

v.

**BOWLES RICE McDAVID GRAFF & LOVE, PLLC, et al., Defendants,**

v.

**Andrews & Wagner, Third–Party Defendant.**

No. 28470.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2001.

Decided April 27, 2001.

Susan R. Snowden, Martin & Seibert, Martinsburg, Stephen D. Brown, George M. Gowen, Dechert, Price & Rhoads, Philadelphia, PA, Attorneys for Plaintiff.

Tammy A. Bittorf, Layva, Bittorf & Santa Barbara, Martinsburg, David L. Haber, Weinheimer, Schadel & Haber, Pittsburgh, PA, Attorneys for Third–Party Defendant.

Michael J. Farrell, Farrell, Farrell & Farrell, Huntington, Attorney for Defendants.

STARCHER, Justice:

In this case we answer four certified questions from a federal court. We hold that advice of counsel is not an absolute defense in an employment law case; that a defendant in a legal malpractice lawsuit is not barred from asserting a claim against another attorney who provided services to the plaintiff; that experts may testify in legal malpractice

cases; and that the plaintiff in a state employment law case did not receive an illegal double recovery.

## I.

### *Facts & Background*

The instant case is before this Court upon four certified questions from the United States District Court for the Northern District of West Virginia. These questions relate to issues arising in a federal civil case (under diversity jurisdiction) alleging legal malpractice. The federal legal malpractice case arises from the proceedings in a state court employment law civil case in which this Court issued an opinion in 1997. *Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678 (1997) (*per curiam*) ("the *Vandevender* case").

In the *Vandevender* case, Ms. Cheryl Vandevender sued Sheetz, Inc., a Pennsylvania corporation ("Sheetz"), alleging that she had been terminated and subsequently retaliated against in violation of West Virginia's workers' compensation and human rights laws. A jury awarded Ms. Vandevender $130,066.00 in compensatory damages, $170,000.00 for noneconomic or emotional distress damages, and $2,699,000.00 in punitive damages.[1]

In the federal legal malpractice case ("the instant case"), the plaintiff is Sheetz. Sheetz claims in the instant case that the jury in *Vandevender* awarded punitive damages (and that this Court did not on appeal strike the punitive damages award entirely) because, according to Sheetz, Sheetz's trial lawyer in *Vandevender*, and his law firm, Bowles, Rice, McDavid, Graff & Love PLLC (collectively, "Bowles"), committed legal malpractice in connection with the *Vandevender* case.

Bowles, then, is the defendant in the instant federal legal malpractice case. Bowles has denied committing any malpractice and asserts that Sheetz's conduct toward Ms. Vandevender was the proximate cause of Ms. Vandevender's receiving the punitive damages award in the *Vandevender* case.

---

1. On appeal, this Court reduced the punitive damages award by $466,260.00. *See Vandevender,* 200 W.Va. at 606, 490 S.E.2d at 693.

Bowles has also impleaded Sheetz's Pennsylvania law firm, Andrews & Wagner ("Andrews"), as a third-party defendant in the federal legal malpractice case. Bowles claims that if there has been any legal malpractice that caused or contributed to the punitive damages award in *Vandevender*, it was legal malpractice by Andrews in connection with the formulation, review, and approval of Sheetz's employment policies.

After substantial pre-trial proceedings in the federal case, the federal district court entered an order certifying four questions of law to this Court. The questions are as follows:

A. Is the advice of counsel defense an absolute bar to any claim for punitive damages in a wrongful termination of employment claim in West Virginia?

B. Do the doctrines of joint tortfeasor and right of contribution apply in the legal malpractice context of a client's predecessor law firm and successor law firm, each of whose respective conduct is separated by an intervening trial caused by the predecessor law firm's alleged legal malpractice?

C. Does West Virginia law allow the use of lawyers as experts in legal malpractice cases?

D. Is a plaintiff's own testimony of both an aggravation of a prior physical injury and emotional distress a "sufficient quantifiable measure" to sustain a verdict for both emotional distress and punitive damages or, must a plaintiff produce "substantial and concrete" evidence of serious physical injury to avoid application of the double-recovery preclusion?

The federal district court accompanied these questions with a statement of the case that we reproduce in a footnote.[2]

**2. A. *The Grounds for the Alleged Legal Malpractice.***

The alleged legal malpractice arises out of an employment law case in the Circuit Court of Berkeley County, West Virginia styled *Cheryl Vandevender v. Sheetz, Inc., et al.*, C.A. No. 94–C–653, and as reported on appeal in 200 W.Va. 591, 490 S.E.2d 678 (1997) (per curiam). The law firm of Bowles, Rice, McDavid, Graff & Love (Bowles) by and through, Norwood Bentley, III, Esq., (Bentley), represented Sheetz, Inc., in that action.

Andrews & Wagner (Andrews), the Third Party Defendant in this civil action, drafted an employee termination policy for Sheetz. Based upon the termination policy, Sheetz terminated Cheryl Vandevender (Vandevender) while she was off-work and receiving Workers' Compensation Benefits.

In response, Vandevender sued Sheetz alleging that Sheetz wrongfully terminated her and failed to rehire her in violation of West Virginia law. Additionally, in her amended complaint, Vandevender included a cause of action for unlawful reprisal.

Bowles claims that it advised Sheetz that the termination policy violated West Virginia law and that it recommended to Sheetz that Sheetz settle the matter. Bowles also asserts that it urged Sheetz to re-hire Vandevender to diminish Sheetz' liability for Vandevender's front pay damages. Bowles then requested Vandevender to make a settlement demand for backpay, benefits and legal fees.

Vandevender offered to settle the matter for $30,000. Contrary to Bowles' recommendation that Sheetz settle the matter, Sheetz rejected Vandevender's $30,000 settlement offer. Sheetz, however, made a counter-offer, authorizing Bowles to offer Vandevender a maximum of $10,000 with the condition that Vandevender not return to work. Bowles advised Sheetz that, although Sheetz should settle this matter, this counter-offer was insufficient. Sheetz did not follow Bowles' advice and did not change the terms of its counter-offer.

Sheetz, however, in following Bowles' advice to diminish Vandevender's front pay damages, rehired Vandevender. On the first day Vandevender returned to work, Sheetz personnel instructed her, without regard to her known physical work limitations as prescribed by her doctor, to stock the soda cooler. Vandevender claimed that this activity caused her to aggravate her back injury. Consequently, Vandevender amended her complaint to allege the claim of unlawful reprisal.

The Circuit Court concluded that Sheetz' termination of Vandevender violated W.Va.Code, § 23–5A–3(a) (1994) and that the termination policy was illegal. The Jury awarded Vandevender approximately $3 million, including over $2.5 million in punitive damages. In his post-trial order, Judge Thomas W. Steptoe, Jr. concluded that there was adequate evidence of Sheetz' wilful misconduct and, therefore, upheld the Jury's punitive damages award.

On appeal, the West Virginia Supreme Court of Appeals concluded that there was adequate evidence to support an award of punitive damages. (*Vandevender v. Sheetz, Inc.*, 200 W.Va. 591, 490 S.E.2d 678, 688–89 (1997) ("[W]e conclude that sufficient evidence was presented of willful, wanton, and/or reckless conduct that warranted a consideration of punitive damages by the jury.") The Court, however, reduced the amount of Vandevender's punitive damages. *Id.* at 693 ("[W]e determine that the punitive damages award should be reduced").)

The federal district court also included in the certified question order a brief discussion of each question and the court's proposed answer to the question. We include these discussions and answers in footnotes at the beginning of our discussion of each question.

## II.

### Standard of Review

■ We have before us the record and briefs in the federal case, and the trial transcript and appellate briefs from the *Vandevender* case. The federal court's certified questions are matters of law that we address *de novo*. We recognize that the factual statements in the district court's certification order are not formal "findings of fact."

B. *The Legal Malpractice Actions.*

After the Jury's verdict, Sheetz first asserted a legal malpractice claim against Andrews. Stan Sheetz, an officer/owner of Sheetz, Inc., told David Andrews, a senior partner with the law firm, that he was considering filing a malpractice claim against Andrews because Andrews prepared Sheetz' unlawful termination policy. Stan Sheetz thought Sheetz, Inc., could recover approximately $30,000 from Andrews, representing Vandevender's settlement demand.

Sheetz settled this matter with Andrews. Under the terms of this settlement, Andrews agreed to provide Sheetz legal services. Additionally, Andrews' legal services were to be reduced by a rate of fifteen percent (15%) until a total discount figure of $30,000 was reached. Thereafter, Andrews' normal billing rates would apply.

Sheetz then brought the instant complaint against Bowles raising numerous allegations of legal malpractice. Sheetz alleged that Bowles failed to adequately advise Sheetz of its potential liability to punitive damages. (Sheetz also alleged that Bowles committed legal malpractice when Bentley failed to preserve for appeal, the issue of the availability of punitive damages for violations of West Virginia Workers' Compensation Act and West Virginia Human Rights Act. The West Virginia Supreme Court of Appeals, however, previously rejected this allegation. In *Haynes v. Rhone-Poulenc, Inc.*, 206 W.Va. 18, 521 S.E.2d 331 (1999), the Court stated that punitive damages were available in cases such as the *Vandevender* case. *Id.* at 346 (stating that the court did not decide whether punitive damages were available under the West Virginia Human Rights Act in, *inter alia, Vandevender*); *see also id.* at 348 ("We hold that punitive damages are an available form of remedial relief that a court may award under the [West Virginia Human Rights Act]").) Additionally, Sheetz claimed that Bowles failed to adequately defend the issue of

## III.

### Discussion

### A.

#### Advice of Counsel

The district court's first certified question is:

Is the advice of counsel defense an absolute bar to any claim for punitive damages in a wrongful termination of employment claim in West Virginia? [3]

■ We begin our discussion by recognizing the principle of law that this Court enunciated in Syllabus Point 3 of *Powers v. Goodwin*, 174 W.Va. 287, 324 S.E.2d 701 (1984):

Except for malicious prosecution suits, it is generally held that reliance on advice of counsel is not an absolute defense to

punitive damages at trial by (a) failing to raise the "advice of counsel" defense, (b) failing to bifurcate the issue of liability and damages, (c) failing to object to a jury instruction allowing both emotional distress and punitive damages, and (d) permitting Vandevender to introduce, at trial, evidence of Sheetz' financial information of gross revenues.

In response, Bowles brought a claim of contribution based upon a joint tortfeasor theory against Andrews. Specifically, Bowles claims that the negligent advice Andrews provided Sheetz, in drafting the unlawful termination policy, was the primary cause of Sheetz' alleged damages. Furthermore, Bowles requested that the Court set aside Sheetz' settlement with Andrews because the parties did not execute this settlement in good faith.

3. The district court's discussion and proposed answer to this question are as follows:

In West Virginia, the advice of counsel defense is a bar to punitive damages in an action for malicious prosecution. However, West Virginia has not specifically extended this advice of counsel defense to cases involving unlawful termination and failure to hire.

In *Vandevender v. Sheetz, Inc.*, the West Virginia Supreme Court of Appeals recognized that a "bad or legally incorrect corporate policy is not the equivalent of a mean-spirited, evil intent to cause harm." Therefore, the advice of counsel defense, in this case being Andrews' negligent advice in drafting the unlawful termination policy, may present a mitigating factor in awarding punitive damages. This Court, however, concludes that an advice of counsel defense is currently not an absolute bar to punitive damages in cases involving unlawful termination and failure to hire.

charges that a person is acting unlawfully or negligently.

■■■ We further said in *Powers:*

It seems clear, though, that the party asserting this defense has the burden of showing that he: (1) made a complete disclosure of the facts to his attorney; (2) requested the attorney's advice as to the legality of the contemplated action; (3) received advice that it was legal; and (4) relied upon the advice in good faith.

\* \* \*

However, acting under advice of counsel is not an absolute defense in other situations. In the contempt field, we have stated that it is not a defense, but may go to the mitigation issue.... This issue has been raised in suits involving violations of civil rights under 42 U.S.C.A. § 1983, which are treated as federal tort actions. Typical of most courts' approach in this area is this statement from *Crowe v. Lucas*, 595 F.2d 985, 992 (5th Cir.1979): "Reliance on advice of counsel does not serve as an absolute defense to a civil rights action. Rather, it is among the calculus of facts that a jury is to consider on the issue of good faith."

174 W.Va. at 291–292, 324 S.E.2d at 705–706. (Citations and footnotes omitted.)

The principles that we discussed in *Powers* can be found in many cases. For example, in *Crowe v. Lucas*, 595 F.2d 985 (5th Cir.1979),

a civil rights action, the court held that a jury could conclude that any reliance that the defendants might have placed on advice of counsel did not necessarily remove the taint of malice that colored their acts toward the plaintiff. 595 F.2d at 992. In *Crowe*, the court also held that the advice of counsel was not a separate defense, but was rather among the "calculus of facts" that a jury could take into account in deciding whether to award punitive damages. *Id.*

In a wrongful eviction case, *Town Ctr. Management Corp. v. Chavez*, 373 A.2d 238, 245 (D.C.Ct.App.1977), the court similarly rejected a defendant's proposed use of the advice of counsel as an absolute defense to punitive damages. The court stated:

Appellant's contention amounts then to the assertion that one acting with legal advice, even if for an improper purpose, should be insulated from liability from punitive damages. We disagree. Acting after consulting an attorney does not *necessarily* preclude an award of punitive damages .... the [defendant's] consultation with its attorney was no more than one factor .... to consider.... [Emphasis in original, citations omitted.] [4]

■■■ Whether reliance upon the advice of counsel is successfully proven as a defense to the cause of action of malicious prosecution (or to a similar cause of action that is based on the wrongful use of the court system, like wrongful attachment) [5]—or, in the

---

**4.** *See also VanDyke v. Mountain Coin Machine Dist.*, 758 P.2d 962, 966 (Utah App.1988) (abuse of process and breach of contract action; punitive damages were appropriate in part because the defendant's deliberate misconduct was done "under the advise [sic] of an attorney"); *Pierce v. Penman*, 357 Pa.Super. 225, 515 A.2d 948, 955 (1986) (advice of counsel could be considered as a factor by the finder of fact, but did not overcome plaintiff's case establishing defendant's liability for punitive damages); *Craven v. City of Minot, N.D.*, 730 F.Supp. 1511, 1513 (D.N.D. 1989) (reliance on the erroneous advice of defendant's attorney does not bar a finding that a violation of the Fair Labor Standards Act was a willful violation); *Stumpf v. Pederson*, 180 Okla. 408, 70 P.2d 101, 103 (1937) (evidence of advice of counsel was admissible in mitigation of punitive damages in wrongful attachment suit); *Rova Farms Resort, Inc. v. Investors Ins. Co. of Amer.*, 65 N.J. 474, 323 A.2d 495 (1974) (insurer that refused to settle for policy limits was liable for

entire judgment despite advice of counsel that liability was weak); *Decker v. Amalgamated Mut. Cas. Ins. Co.*, 35 N.Y.2d 950, 952–953, 365 N.Y.S.2d 172, 173, 324 N.E.2d 552, 553 (1974) (reliance on advice of counsel does not as a matter of law negate bad faith in a case of refusal to settle within insurance policy limits); *Perkins v. Stephens*, 131 Mont. 138, 308 P.2d 620, 622 (1957) (evidence of advice of counsel is proper in a trespass case on the issue of punitive damages); *Stanton by Brooks v. Astra Pharm. Prod., Inc.*, 718 F.2d 553, 580 (3d Cir.1983) (jury could consider evidence of advice of counsel in a negligence and products liability case in connection with the issue of punitive damages).

**5.** As we noted in *Powers, supra*, the mere fact of reliance upon the advice of counsel does not establish the defense in a malicious prosecution case. Full disclosure of the facts to an attorney, request for the attorney's advice as to the legality of the contemplated action, advice that the action

case of other causes of action, what weight and significance should be given to relevant evidence relating to the advice of counsel, is ordinarily a question for the finder of fact.[6] *See Seaboard Oil v. Cunningham,* 51 F.2d 321, 325 (5th Cir.1931). *See also Tomasits v. Cochise Memory Gardens, Inc.,* 150 Ariz. 39, 41, 721 P.2d 1166, 1168 (App.1986) (in a wrongful disinterment case, circumstances relating to the defendant's reliance on the advice of counsel could go to show the defendant's negligence; the jury could consider these circumstances in considering punitive damages); *Phillips v. Morrow,* 210 Ala. 34, 97 So. 130, 132 (1923) (whether punitive damages are to be awarded if advice of counsel is claimed as a defense is a question for the jury); *Bradford v. Lawrence,* 208 Ala. 248, 94 So. 103, 104 (1922) (whether advice of counsel is a defense to an award of punitive damages in a malicious attachment case is ordinarily a jury question); *Karow v. Student Inns, Inc.,* 43 Ill.App.3d 878, 882–887, 2 Ill.Dec. 515, 520–522, 357 N.E.2d 682, 687–89 (1976) (it was a jury issue in a malicious prosecution case whether the defendant had disclosed all facts clearly to counsel so as to establish the

advice of counsel defense to false arrest); *Trammell v. Ramage,* 97 Ala. 666, 11 So. 916, 918 (1892) (the fact that the plaintiff acted with the advice of counsel did not foreclose the jury from considering punitive damages in an action for wrongful attachment). *See also Holland v. Thacher,* 199 Cal.App.3d 924, 926, 929, 245 Cal.Rptr. 247, 250, 252 (1988), a legal malpractice case where the alleged negligence of the plaintiff's other attorney was imputable to the plaintiff under principles of agency in the determination of comparative negligence; *in accord, Kroll & Tract v. Paris & Paris,* 86 Cal.Rptr.2d 78, 72 Cal.App.4th 1537 (1999).

◼ Based on the foregoing discussion, we hold that in an employment law civil action, the fact that an employer acted in reliance upon the advice of counsel is not an absolute defense to a claim that the employer acted unlawfully or negligently. Relevant evidence regarding the advice of counsel may be admissible in the trial of an employment law civil action as part of the calculus of evidence that the fact finder considers in reaching its verdict—including on the issue of punitive

was legal, and reliance upon the advice in good faith must be proven to establish the defense. *Id. See also Wright v. Yurko,* 446 So.2d 1162 (Fla. App.1984); *Dellums v. Powell,* 566 F.2d 167, 185–86 (D.C.Cir.1977) (advice of counsel would not be a defense if the defendant had not disclosed all material facts to counsel).

**6.** Although the proposition may not be immediately intuitive, upon reflection (and in examining the case law) one can see that circumstances involving the "advice of counsel" are a two-edged sword that may reduce or enhance liability or damages, depending upon the circumstances and the issues in a given case, and upon how those circumstances weigh with the fact finder. For example, a defendant could argue: "But our lawyers said it was OK!"; while a plaintiff could argue: "They had the best lawyers available, but they still didn't get it right!" Both arguments could make a valid and relevant point, depending on the specific issues and circumstances of a case.

Generally speaking, constitutional and public policy concerns caution against expansively shielding conduct from accountability merely because of the involvement of an attorney in connection with that conduct. For example, it would unfairly tilt the playing field to shield one class of parties from accountability simply because the advice of an attorney arguably affected

their conduct, where other similarly situated parties are held strictly accountable for their conduct, regardless of whether an attorney counseled that conduct. *Cf.* Syllabus Point 8, *White v. Berryman,* 187 W.Va. 323, 332, 418 S.E.2d 917, 926 (1992) ("[A]n attorney's negligence will not serve as the basis for setting aside a default judgment on grounds of 'excusable neglect.' ") *Cf. also State ex re. Walker v. Giardina,* 170 W.Va. 483, 486, 294 S.E.2d 900, 903 (1982) ("... one is not excused for his disobeyance of a valid court order because someone told him not to obey it."); *Holiday v. City of Chattanooga,* 206 F.3d 637, 645 (6th Cir.2000) ("Employers do not escape their legal obligations under the ADA by contracting out ... personnel functions to third parties."); *Sprott v. Avon Products, Inc.,* 596 F.Supp. 178, 182–83 (S.D.N.Y.1984) (ADEA plaintiff could not rely upon "advice of counsel" in support of his request for equitable tolling of the statute of limitations). *Cf. also* Michael V. Ciresi, Roberta B. Walburn, and Tara D. Sutton, "Decades of Deceit: Document Discovery in the Minnesota Tobacco Litigation," 25 William Mitchell Law Review 477 (1999) (tobacco companies unsuccessfully asserted attorney-client privilege as grounds for shielding research on addiction and tobacco-related illness from litigation disclosure).

Simply put, attorneys are not immunity machines.

damages, where that issue is presented.[7]

Based on the foregoing reasoning, our answer to the district court's first certified question is "no."

### B.

### *Contribution & Impleader*

The district court's second certified question is:

> Do the doctrines of joint tortfeasor and right of contribution apply in the legal

malpractice context of a client's predecessor law firm and successor law firm, each of whose respective conduct is separated by an intervening trial caused by the predecessor law firm's alleged legal malpractice? [8]

In addressing this question, we first briefly review West Virginia case law relating to contribution among tortfeasors and the impleader of third-party defendants.

In *Board of Education of McDowell County v. Zando, Martin, and Milstead, Inc.,* 182

---

7. In the instant case, Sheetz faults Bowles for allegedly failing to adopt the strategy in the *Vandevender* trial of asserting that in terminating Ms. Vandevender—a person with a disability who was receiving workers' compensation benefits—Sheetz was merely implementing a corporate policy that Sheetz's counsel Andrews had approved. However, upon the record before this Court, the circumstances regarding Sheetz's "reliance on the advice of counsel" with respect to its West Virginia employees are of uncertain import. For example, Andrews contradicts Sheetz's position and denies having any responsibility for Sheetz's employment policies at Sheetz's non-Pennsylvania operations. Additionally, at the *Vandevender* trial, Sheetz employees testified that Sheetz had concluded, with the advice of counsel—and after Ms. Vandevender brought her claim of wrongful termination—that the personnel policy that was applied to Ms. Vandevender clearly violated West Virginia law. However, Sheetz's witnesses also acknowledged at trial that Sheetz had done nothing to identify or correct any adverse personnel actions against other Sheetz West Virginia employees that were based on the illegal policy. Additionally, the advice of counsel strategy in the *Vandevender* case could have made relevant what Sheetz had told Andrews and vice versa—and possibly even what Sheetz had told Bowles and vice versa. *See, e.g., Wender v. United Services Auto. Ass'n.,* 434 A.2d 1372, 1374 (D.C.1981) (holding that an invocation of the advice of counsel defense waives the attorney-client privilege). *See also generally,* Annotation, "Legal Malpractice: Negligence or Fault of Client as Defense," 10 A.L.R.5th 828.

8. The district court's proposed answer to this question and discussion are as follows:

> Contribution is an equitable doctrine, arising in contract or tort, involving three different parties: two obligors and one obligee. In this situation, the two obligors share an obligation to the obligee. Then, the two obligors are sued on their shared obligation. Ultimately, one obligor is forced to pay more of its fair share of the obligation that it shares with the other obligor. Consequently, this obligor seeks recovery against that other obligor. However, the obligor can only

recover amounts in excess of the obligor's fair share.

> Under tort law principles, the joint tortfeasors' negligence must be the proximate cause of the injuries. A proximate cause is "that act which directly produced or concurred in producing the injury." An intervening cause "constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury." The practical effect of an intervening cause is to relieve an otherwise negligent party from liability.

> Sheetz has sued Bowles for the entire $3 million verdict after Sheetz settled its malpractice claim against Andrews. Bowles claims that Andrews and Bowles are joint tortfeasors and that Andrews' negligence, in drafting the unlawful termination policy, is the proximate cause of Sheetz' injuries, the $3 million verdict. Furthermore, Bowles claims that, because Bowles and Andrews both provide Sheetz legal services, Bowles and Andrews are two obligors sharing a common obligation to provide Sheetz adequate legal advice. Additionally, Bowles argues that the Sheetz–Andrews settlement effectively exposes Bowles to the potential of paying more than its fair share of this shared obligation. For this reason, Bowles seeks to recover against Andrews. Bowles, therefore, impleaded Andrews as a third-party defendant in this civil action.

> Bowles also seeks to set aside the Sheetz–Andrews settlement on grounds that Sheetz and Andrews did not execute this settlement in good faith.

> Neither party has been able to submit any controlling West Virginia decisions as to the legal malpractice claims in the context of joint tortfeasors and the right of contribution. The key treatise concerning legal malpractice recognizes that, frequently, other lawyer-defendants have attempted to join the plaintiff-client's predecessor or present attorneys as additional defendants. Although many different jurisdictions have considered this issue, there appears to be no clear majority position. Therefore, unless the West Virginia Supreme Court of Appeals holds otherwise, the Court concludes that the intervening jury trial acts as an intervening cause and, therefore, terminates Bowles' claim for contribution against Andrews' alleged prior legal malpractice in a joint tortfeasor context.

W.Va. 597, 390 S.E.2d 796 (1990), a Board of Education sued an architectural and engineering firm ("ZMM"), claiming that ZMM was negligent and breached its contract with the Board to design and supervise the construction of a new school, after cracks and other damage to the building developed in the years immediately following its construction.

ZMM filed a third-party complaint against two other companies that the Board had hired—one company did soil testing at the construction site, and one company did most of the building construction. We held in *Zando* that ZMM could maintain an action for contribution against the third-party defendants, based on an inchoate right of contribution.

▆ We held in Syllabus Point 4 of *Zando* that an action for contribution "may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff." *See also Sydenstricker v. Unipunch Prods., Inc.*, 169 W.Va. 440, 452, 288 S.E.2d 511, 518 (1982).

▆ We further stated in *Zando* that the

> ... right of inchoate contribution is not confined only to cases of joint negligence. Instead, it arises under any theory of liability which results in a common obligation to the plaintiff.... The touchstone of the

right of inchoate contribution is this inquiry: Did the party against whom contribution is sought breach a duty to the plaintiff which caused or contributed to the plaintiff's damages?

The fundamental purpose of inchoate contribution is to enable all parties who have contributed to the plaintiff's injuries to be brought into one suit.

182 W.Va. at 603, 390 S.E.2d at 802.

In another contribution case, *Magnet Bank v. Barnette,* 187 W.Va. 435, 437, 419 S.E.2d 696, 698 (1992) (*per curiam* ), we held that a third-party contribution claim by a defendant against the defendant's law firm claiming legal malpractice was derivative of the same transaction, occurrence or nucleus of operative fact as the underlying claim by the plaintiff; and the third-party claim was allowed.

▆ *Magnet Bank* and *Zando* illustrate the principle that West Virginia jurisprudence favors the consideration, in a unitary trial, of all claims regarding liability and damages arising out of the same transaction, occurrence or nucleus of operative facts, and the joinder in such trial of all parties who may be responsible for the relief that is sought in the litigation.[9]

Turning to the more specific issue of third-party impleader of other attorneys in legal malpractice actions on contribution claims, we continue our discussion by examining the recent case of *Parler & Wobber v. Miles &*

---

9. *See, e.g.,* Syllabus Point 4, *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981); *State ex rel. Tinsman v. Hott,* 188 W.Va. 349, 424 S.E.2d 584 (1992); *State ex rel. Crafton v. Burnside,* 207 W.Va. 74, 528 S.E.2d 768 (2000); *Barth v. Keffer,* 195 W.Va. 51, 56, 464 S.E.2d 570, 576 (1995). We held in *Howell v. Luckey,* 205 W.Va. 445, 518 S.E.2d 873 (1999), that a defendant who does not invoke the third-party procedures of Rule 14 to implead another defendant who allegedly contributed to the plaintiff's injuries risks forfeiting the right to seek contribution. *See also Mackey v. Irisari,* 191 W.Va. 355, 445 S.E.2d 742 (1994) (physician sued for malpractice could implead second physician on claim that second physician's negligence contributed to damages claimed by plaintiff); *Pennington v. Bluefield Orthopedics, P.C.,* 187 W.Va. 344, 419 S.E.2d 8 (1992) (successive tortfeasors were jointly responsible for damages claimed by plaintiff); *Rine By and Through Rine v. Irisari,* 187 W.Va. 550, 420 S.E.2d 541 (1992) (a physician is liable for aggravation of injuries resulting from subsequent negligent treatment, if foreseeable, where subsequent treatment is undertaken to mitigate the harm caused by the physician's own negligence).

The approach that West Virginia has taken to contribution and impleader is consistent with other jurisdictions. For example, in *Monarch Life Ins. Co. v. Donahue,* 702 F.Supp. 1195 (E.D.Pa.1989), the court held that the *Federal Rules of Civil Procedure,* Rule 14, should be liberally construed to allow third-party impleader where the original defendant seeks to transfer to the third-party defendant the liability asserted against the original defendant by the plaintiff. *See also O'Mara Enterprises, Inc. v. Mellon Bank, N.A.,* 101 F.R.D. 668 (W.D.Pa.1983) (third-party joinder to assert a contribution claim should be permitted if under some construction of the facts recovery on the claim is a possibility); *Taylor v. G.I. Export Corp.,* 78 F.R.D. 494 (E.D.N.Y.1978) (defendant export corporation could implead the accounting firm whose negligence allegedly led to the plaintiff's damages as a third party on a contribution claim).

*Stockbridge*, 359 Md. 671, 756 A.2d 526 (2000), in which the Maryland Court of Appeals addressed a certified question from a federal district court that is quite similar to the contribution/impleader question that we are considering in the instant case.

In *Parler*, an attorney-defendant in a legal malpractice case, "Lawyer I," sought to implead as a third-party defendant the plaintiff's current attorney, "Lawyer II." Lawyer I claimed that Lawyer II's negligence had contributed to the damages that the plaintiff argued had resulted from Lawyer I's alleged malpractice.

The *Parler* opinion contains an instructive discussion of the evolution of Maryland's law of allocation of damages among multiple tortfeasors, an evolution that is similar to what has occurred in West Virginia. Regarding this evolution, *Parler* states: "[T]he unfairness of allowing a plaintiff the power to pick and choose whom to sue for damages was alleviated by providing the defendant with the right to implead a responsible third party to share in the liability." 359 Md. at 686, 756 A.2d at 534. *Parler* further states:

> Contribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.

*Id.* (Citations omitted.)

In *Parler*, the Maryland court weighed the public policy in favor of assuring that all potentially responsible, accountable, and liable persons are brought before the court for a determination of what liability they may or may not have—and found that this policy interest could outweigh the disruption of the attorney-client relationship that would arise as a result of allowing the impleading of the plaintiff's current counsel, Lawyer II, as a defendant. The *Parler* court concluded that under the facts of the case before the court, the impleader of Lawyer II was permissible.

The *Parler* court stated:

> Prohibiting a joint tortfeasor action in this case would [ ... circumvent the purpose of Maryland's Uniform Contribution Against Tortfeasors Act (UCATA) which

requires] that a party should be held accountable for damages caused by his or her negligence. Successor counsel could escape from this accountability by forcing former counsel to shoulder the burden of loss to the client *in situations where both attorneys may have brought about the client's injury.* The unfair and unjust outcome for former counsel would be reminiscent of the pre-UCATA era. We think the better public policy approach is for the parties to lay their cards on the table for the fact-finder to determine the facts and allocate the loss to the proper parties, rather than granting successor counsel a shield of immunity for its alleged wrongful acts.

We respect the public policy concerns voiced by our sister states that prohibit former counsel from suing successor counsel. Many of their concerns, however, cut both ways. Prohibiting an impleader action in such cases also may undermine the attorney-client relationship. For example, the *Holland* [*v. Thacher*, 199 Cal.App.3d 924, 245 Cal.Rptr. 247 (1988) ] court voiced concern that allowing former counsel to sue successor counsel would forge an irresponsible weapon of intimidation. *See* 245 Cal.Rptr. at 250. By the same token, we can envision, given successor counsel's position of trust with and influence over the client, that a bar to an impleader action could create a situation ripe for successor attorney mischief and manipulation. It would hardly be in the client's best interest to be represented by counsel that was negligent in causing an injury to the client, but who failed to disclose the negligence to the client or take responsibility for the action. This dominant position leaves us uneasy accepting the notion that successor counsel should be left to its potential self-dealing. Furthermore, Appellants' argument that their ethical duty of confidentiality is infringed by the tortfeasor action is misplaced. As discussed *supra*, the confidentiality duty, unless exempted by law, must succumb to discovery and the search for truth.

Moreover, we do not lack faith in the disciplinary tools in the Maryland Rules, and particularly the Rules of Professional

Conduct (RPC), that deter the filing of frivolous and harassing claims. They represent potential consequences to discourage an improper impleader action. They address, for example, the *Holland* court's concerns, such as the availability for monetary sanctions, at the state and federal levels, against attorneys that fall prey to the temptation of harassing an opponent. 359 Md. at 704–706, 756 A.2d at 544–545 [emphasis added, footnotes omitted].

The *Parler* opinion recognizes, in the foregoing quoted language, that some courts have prohibited "other-attorney impleader" in legal malpractice cases when impleader would interfere with the attorney-client relationship. *See, e.g., Holland v. Thacher,* 199 Cal.App.3d 924, 245 Cal.Rptr. 247 (1988). However, even when such interference is possible, many courts have taken the position that is adopted in *Parler,* and recognized that a defendant attorney in a legal malpractice case may make a third-party contribution claim against a plaintiff's subsequent, current, or former attorney. *See, e.g., LaPorte v. Mott,* 227 A.D.2d 824, 825–826, 642 N.Y.S.2d 418, 419 (1996) (a defendant attorney in a legal malpractice case could implead the plaintiff's successor attorney, the court stating: "[I]t is not necessary that [the defendant's third-party] claim against [the suc-

cessor attorney] arise out of the rendition of legal services in the very same [legal] proceeding or transaction ... it suffices that [the successor attorney's] breach of duty merely had a part in causing or augmenting the injury for which contribution is sought.") [10]

█ We need not in the instant case establish a broad rule for our courts in this somewhat arcane and complex area of the law—and prudence dictates that we should not. However, because the issue of other-attorney impleader in legal malpractice cases is a matter of state law that necessarily underlies and is fairly raised by the district court's second certified question, we state that we find the reasoning of *Parler* (and the cases cited herein that agree with *Parler*) to be consistent with this state's contribution jurisprudence. Under the specific facts of the instant case, we determine that the impleader of Andrews as a third-party defendant by Bowles is not barred under West Virginia law regarding the seeking of contribution from third parties, merely because of an attorney-client relationship between Andrews and Sheetz.[11]

█ This determination, however, does not fully answer the second certified question

---

10. *See also Crouse v. Brobeck, Phleger & Harrison,* 80 Cal.Rptr.2d 94, 115–117, 67 Cal.App.4th 1509, 1544–1548 (1998) (successor attorney, a defendant in legal malpractice suit, could assert a claim against a predecessor attorney as a third-party defendant alleging that the damages claimed by the plaintiff are "attributable, at least in part" to the plaintiff's predecessor attorney); *Smith v. McDougall,* 365 Pa.Super. 157, 529 A.2d 20 (1987) (defendant attorney in a legal malpractice case joined plaintiff's previous counsel as third-party defendant); *Schauer v. Joyce,* 54 N.Y.2d 1, 444 N.Y.S.2d 564, 429 N.E.2d 83 (1981) (defendant lawyer in a malpractice case was permitted to join the plaintiff's successor lawyer for negligent failure to correct problems allegedly caused by the previous lawyer's negligence); *Hood v. McConemy,* 53 F.R.D. 435 (D.Del.1971) (whether allegedly negligent actions of two attorney-defendants combined to produce plaintiff's damages was an issue for the jury; contribution claim by one attorney against the other allowed); *Brown-Seydel v. Mehta,* 281 Ill. App.3d 365, 217 Ill.Dec. 131, 666 N.E.2d 800 (1996) (defendant attorney in a legal malpractice case could bring a third-party contribution claim against the plaintiff's subsequent attorney); *Gor-*

*an v. Glieberman,* 276 Ill.App.3d 590, 596–597, 213 Ill.Dec. 426, 431, 659 N.E.2d 56, 61 (1995) (Illinois law is clear that an attorney may seek contribution from another attorney in a legal malpractice claim). *Cf. Commercial Standard Title Co. v. Superior Court,* 92 Cal.App.3d 934, 953, 155 Cal.Rptr. 393, 405 (1979) (Cologne, J., concurring and dissenting) ("The importance of having all tortfeasors before the court to secure a defendant's right of indemnity overrides the plaintiff's right to shield his attorney and, incidentally, his own behavior, on the issues he has raised by the lawsuit.")

11. The situation in the instant case differs somewhat from the situation in the *Parler* case. Bowles is not claiming that conduct by a "successor" attorney caused or contributed to the punitive damages award in the *Vandevender* case. Rather, Bowles seeks contribution from Sheetz's "predecessor" attorney, insofar as Andrews allegedly had responsibilities regarding the employment policy that was an issue in *Vandevender.* However, Andrews apparently continues to provide legal services to Sheetz, so there apparently is an ongoing attorney-client relationship.

from the district court—because the district court also concluded that the jury trial in the *Vandevender* case was an "intervening cause" that, as a matter of law, bars Bowles from asserting a third-party contribution claim against Andrews.

On the issue of "intervening cause," we have held that if a first act of negligence sets off a chain of events or creates a situation ultimately resulting in injury, then such negligence may very well constitute the proximate cause of said injury, even if intervening negligence occurs. *Evans v. Farmer*, 148 W.Va. 142, 154–156, 133 S.E.2d 710, 717–718 (1963). Additionally, where two or more persons are guilty of separate acts of negligence which in point of place and time concur, and together proximately cause or contribute to the injuries of another, such persons are guilty of concurrent negligence for which they may be held jointly and severally liable. Syllabus Point 1, *Reilley v. Byard*, 146 W.Va. 292, 119 S.E.2d 650 (1961). *In accord*, Syllabus Point 5, *Kodym v. Frazier*, 186 W.Va. 221, 412 S.E.2d 219 (1991).

An intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury. Syllabus Point 3, *Wehner v. Weinstein*, 191 W.Va. 149, 444 S.E.2d 27 (1994).

Syllabus Point 2 of *Evans v. Farmer* says:

> The questions of negligence, contributory negligence, proximate cause, *intervening cause* and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable [persons] may draw different conclusions from them.

(Emphasis added.) *In accord, Harbaugh v. Coffinbarger*, 209 W.Va. 57, 543 S.E.2d 338 (2000) (*per curiam*).

From the pre-trial record that is before us in the instant case, a finder of fact could reasonably conclude (1) that Andrews had substantial responsibilities with respect to developing and approving Sheetz's policies and practices governing the treatment of Sheetz's employees who were receiving worker's compensation and/or who had disabilities; and (2) that those policies and practices directly exposed Sheetz to legal liability in circumstances like Ms. Vandevender's, and quite possibly on a wholesale basis in West Virginia.

In other words, a finder of fact could reasonably conclude that because of serious legal "design defects" in Sheetz's employment policies and practices—defects for which Andrews had substantial responsibility—the Vandevender termination and the resulting *Vandevender* litigation were an "accident waiting to happen;" and that Andrews' conduct therefore played a direct role in causing the accident. It also appears to be a reasonable possible conclusion that the use by Sheetz of an overall illegal employment policy for Sheetz's West Virginia employees—especially by a large corporation that had easy access to legal counsel—was a significant contributing factor in the size of the *Vandevender* punitive damages award, further implicating Andrew's responsibility with respect to the punitive damages award.

The foregoing examples of reasonable conclusions from the evidence that permit viewing Andrews' conduct as playing a proximate role in causing or contributing to the punitive damages award in the *Vandevender* case are not exhaustive. However, these examples suffice to show that one can view the evidence in the instant case as permitting an affirmative answer to the contribution test that we set forth in *Zando, supra*: did the third-party defendant (Andrews) breach a duty to the plaintiff (Sheetz) that caused or contributed to the damages that the plaintiff is seeking from the defendant (Bowles)?

Applying the "intervening cause" principles of *Evans v. Farmer, supra* to these permissible views of the evidence, a fact finder could reasonably conclude that the *Vandevender* jury trial did not clearly interrupt or supplant the natural flow of proximate causation and consequence from Andrews' conduct in connection with Sheetz's employment policies—and that therefore the *Vandevender*

jury trial was not an entirely new and independent cause of the punitive damage award in *Vandevender*. A fact finder could conclude that whatever Bowles' liability (if any) was in connection with the punitive damages award in *Vandevender*, Andrews was also liable in connection with that award, due to Andrews' contributing conduct.[12] Simply put, a fact finder could reasonably conclude that the jury trial in *Vandevender* was not an intervening cause. (We note that neither Andrews nor Sheetz has cited us to any case that has held that a jury trial in similar or analogous circumstances was as a matter of law an intervening cause.)

Of course, we recognize that Andrews vigorously disputes the correctness of all of the foregoing possible conclusions. At this juncture, however, the issue is not whether such conclusions are incontrovertibly established certainties, but rather whether they are reasonable conclusions that a fact finder could make—and we believe that they clearly are.

12. Andrews' conduct in connection with Sheetz's employment policies was apparently the basis for a $30,000.00 legal fee discount agreement between Andrews and Sheetz. However, Sheetz does not claim that Andrews' conduct caused or contributed to the punitive damages award in the *Vandevender* case. Although the district court's discussion characterizes this fee discount as a "settlement," it does not appear to be a settlement of any claim that Andrews has any liability for the *Vandevender* punitive damages, the claim made in the instant case.

13. The district court's answer to this question and discussion is as follows:
 Sheetz has moved *in limine* to exclude the testimony of legal opinions from Bowles' expert witness, Franklin D. Cleckley. In part, Sheetz asserts that Cleckley will offer his personal opinions as to how the West Virginia courts would have ruled on certain legal issues if Bowles had raised those legal issues during the *Vandevender* trial.
 In support of its motion, Sheetz relies upon *Adelman v. Baker, Watts & Co.* for the proposition that the Fourth Circuit recognizes that the trial judge decides issues of law and that expert testimony is inadvisable on strictly issues of law. While this Court does not question the analysis in *Adelman*, the Court notes that the Fourth Circuit also recognized that a trial judge has the discretion to permit expert legal testimony. In the *Environmental Defense Fund, Inc. v. Lamphier*, the Fourth Circuit authorized a trial judge to allow an expert to testify as to the application and interpretation of state environmental statutes and regulations.

Based on the foregoing discussion, we hold that an attorney-defendant in a legal malpractice case is not barred from impleading another attorney who has provided legal services to the client-plaintiff, as a third-party defendant on a contribution claim, merely because a jury trial that resulted in damages for which the plaintiff claims the original attorney-defendant is liable occurred after the allegedly contributing conduct of the third-party defendant.

Our answer to the district court's second certified question is "yes."

## C.

### Experts

The district court's third certified question is:

Does West Virginia law allow the use of lawyers as experts in legal malpractice cases?[13]

In opposition to Sheetz' motion *in limine*, Bowles asserts that West Virginia recognizes that expert witness testimony, at trial, generally determines professional malpractice cases. Furthermore, Bowles argues that legal expert testimony is necessary because there exist differing opinions on the interpretation of relevant case law. Bowles concludes that these differing opinions will permit a jury to return a verdict in favor of Bowles.

Although this Court sits in diversity and must, therefore, apply West Virginia state substantive law, this Court also applies the *Federal Rules of Evidence* for procedural purposes. However, the Court applies state law rules of evidence when state law makes the proffer of expert testimony necessary to prove an element of the substantive-law claim. Typically, the element of the substantive state law claim is the standard of care or causation such as in a medical malpractice action.

In West Virginia, the elements of actionable legal malpractice are "[t]he attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of the loss to the client." As well, in West Virginia, expert testimony generally resolves questions of professional malpractice. Therefore, the Court applies West Virginia law because, in this case, Cleckley's testimony would resolve whether Bowles neglected a reasonable duty to Sheetz.

West Virginia has not addressed whether expert testimony is admissible in legal malpractice cases. However, other jurisdictions have recognized that legal opinions, from lawyers, may be admissible in actions where the conduct of other

The general rule in West Virginia is that expert testimony is admissible on matters where the opinion of an expert would help the jury. *See West Virginia Rule of Evidence*, Rules 702. As the federal district court's discussion in the instant case noted, there is a consensus of authority in other jurisdictions that this general rule applies in legal malpractice cases. We decline the parties' suggestion that we should delineate in the instant case specific parameters beyond the sound discretion of the court regarding the proper scope of expert testimony in the area of legal malpractice. We hold that expert testimony is admissible in legal malpractice actions. Our answer to the district court's third certified question is "yes."

## D.

### Double Recovery

The district court's fourth certified question, relating to the plaintiff in the *Vandevender* case, is:

Is a plaintiff's own testimony of both an aggravation of a prior physical injury and emotional distress a "sufficient quantifiable measure" to sustain a verdict for both emotional distress and punitive damages or, must a plaintiff produce "substantial and concrete" evidence of serious physical injury to avoid application of the double-recovery preclusion? [14]

To answer this question, we must back up a little and look at the reason that the district court is asking this question.

In the *Vandevender* opinion, this Court declined to substantively address several alleged trial court errors that were asserted by Sheetz on appeal. Specifically, we noted in *Vandevender* that these alleged errors by the trial court had not been properly preserved for appeal at trial. 200 W.Va. at 607, 490 S.E.2d at 694. Part of Sheetz's claim against Bowles is that Bowles committed malpractice by not raising certain objections at trial and thus not properly preserving these alleged errors.[15]

---

lawyers is at issue. These courts reason that, where the conduct of other lawyers is at issue, the legal opinions from lawyers in legal malpractice actions are similar to medical opinions from physicians in medical malpractice actions.

Therefore, this Court concludes that it should deny this motion *in limine* and permit Cleckley to testify about the substantive state law claim of standard of conduct (i.e., whether Bowles neglected a reasonable duty to Sheetz), unless the West Virginia Supreme Court of Appeals rules otherwise.

**14.** The district court's answer to this question and discussion is as follows:

During trial, Vandevender did not introduce any evidence of psychiatric or psychological treatment nor any medical testimony of related trauma in support of her claim for emotional damages. However, she testified that, after her back surgery and on her first day she returned to work, a Sheetz manager forced her to stock a cooler in contravention of her doctor's light work orders and that, as a result, she aggravated her back injury. Consequently, Vandevender sought medical treatment and could not return to work thereafter. Based upon this evidence, the Jury awarded Vandevender punitive damages and damages for her emotional distress.

Sheetz argues that Vandevender's recovery, of both punitive damages and damages for her emotional distress, constitutes impermissible double recovery.

The West Virginia Supreme Court of Appeals, in *Tudor v. Charleston Area Med. Ctr.*, addressed the prohibitions on double recovery and the

plaintiff's ability to recover punitive damages absent evidence of physical injury. The Court recognized that, absent evidence of this physical injury, an award of punitive damages constitutes an impermissible double recovery. At the same time, the Court did not require expert testimony to corroborate a claim of intentional infliction of emotional distress.

The *Tudor* decision, however, appears to be internally conflicting on the amount of evidence, concerning physical injury the plaintiff must present. On the one hand, the Court held that a plaintiff must present "substantial and concrete evidence" of physical injury. On the other hand, the Court held that a plaintiff need only provide "some quantifiable measure" of physical injury.

The question facing this Court is whether a plaintiff must show "substantial and concrete" evidence of physical injury to preclude the application of the double recovery preclusion, or "some quantifiable measure" of evidence of physical injury to warrant giving an instruction of law on the issue in order to sustain a verdict for punitive damages. This Court concludes that plaintiff need only show "some quantifiable measure" of physical injury and that, under this standard, Vandevender did submit a quantifiable measure of evidence of physical injury to warrant an instruction of law and a finding of punitive damages.

**15.** *Cf. Picadilly, Inc. v. Raikos*, 555 N.E.2d 167 (Ind.App.1990), *vacated on other grounds*, 582 N.E.2d 338 (Ind.1991) (legal malpractice claim in connection with punitive damages award).

One of these unpreserved alleged errors that was asserted on appeal by Sheetz was the claim that the jury, because it was improperly instructed, had given Ms. Vandevender an impermissible "double recovery" by awarding her both emotional distress damages and punitive damages.

That is, Sheetz argued on appeal in *Vandevender* that the jury had impermissibly awarded Ms. Vandevender money for the same damages twice-first as emotional distress damages, and second as punitive damages. Sheetz argued on appeal that the jury's punitive damages award against Sheetz should be entirely stricken because of this allegedly erroneous "double recovery."

On this point, Sheetz has stated to the federal district court in the instant case:

If [Bowles] had properly preserved an objection to this duplicative damages jury instruction, the [West Virginia] Supreme Court of Appeals would have stricken the entire punitive damages award.... The [West Virginia Supreme] Court made clear [in Vandevender] that, due to a lack of supporting evidence, it would have overturned the duplicative award were it not for the procedural defect caused by [Bowles'] errors.... *The only reason the [West Virginia Supreme Court of Appeals] did not strike the punitive damages award was because [Bowles] failed to preserve an appropriate objection to it.*

(Emphasis added.)

Sheetz thus says that in *Vandevender* this Court clearly recognized that a jury had awarded and a trial judge had approved an entirely illegal multimillion-dollar punitive damages award—and that we nevertheless sustained that wrongful award, solely on the grounds of a procedural defect in preserving the issue for appeal.

This characterization by Sheetz of this Court's consideration of the alleged errors that Sheetz asserted in its appeal of the jury's verdict in *Vandevender* misapprehends how this Court reviews asserted but unpreserved alleged trial errors.

 The fact that this Court in an opinion states that it is not addressing the merits of an asserted but unpreserved alleged trial court error does not imply that the assertion is meritorious—or that this Court would have found reversible error if the alleged error had been properly preserved.

 In fact, this Court's "plain error" doctrine is specifically designed for the purpose of addressing and correcting errors that go to matters of fundamental fairness, but that were not properly preserved at trial. Syllabus Point 7 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) states:

To trigger application of the "plain error" doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

*See also Cordial v. Ernst & Young*, 199 W.Va. 119, 483 S.E.2d 248 (1996) (citing *Miller*); *Mollohan v. Black Rock Contracting, Inc.*, 160 W.Va. 446, 449, 235 S.E.2d 813, 815 (1977); *Earp v. Vanderpool*, 160 W.Va. 113, 232 S.E.2d 513 (1976).

If the alleged "double recovery" error that Sheetz asserted on appeal in *Vandevender* had been plain, had affected substantial rights, and had seriously affected the fairness, integrity, or public reputation of the judicial proceedings, this Court had both the authority and the duty to use the plain error doctrine to correct it. To the extent that our decision in *Vandevender*, not to invoke the plain error doctrine to address asserted but unpreserved alleged trial court errors, permits any inference, the correct inference would be that the asserted errors did not meet the substantive tests that the plain error doctrine embraces.

 With respect to Sheetz's underlying substantive contention that the punitive damages award that we approved in *Vandevender* violated principles of West Virginia law that prohibit "double recovery"—a contention that we declined to discuss in our *Vandevender* opinion, noting that it had not been preserved at trial—the district court's fourth certified question references certain "double recovery" principles that were discussed in *Tudor v. Charleston Area Medical Center*, 203 W.Va. 111, 506 S.E.2d 554 (1997), a case that was decided 5 months after the

*Vandevender* opinion was issued. We reproduce in a footnote Syllabus Points 12, 13, 14, and 15 of *Tudor*.[16]

In Syllabus Point 12 of *Tudor*, this Court recognized that both punitive damages and damages for emotional distress could be separate items of recovery in a retaliatory discharge case, if a jury found an employer's actions to be wanton, willful or malicious. *See also Stump v. Ashland, Inc.*, 201 W.Va. 541, 553, 499 S.E.2d 41, 53 (1997) (rejecting a "double recovery" challenge to plaintiff's request for separate punitive damages and emotional distress damages in a case where

claims for both wrongful death and negligent infliction of emotional distress were made.)

We recognized in *Tudor* that in the tort of the intentional or reckless infliction of emotional distress, emotional distress is a more integral part of the cause of action itself than is the case with other causes of action, where emotional distress is but one type of injury or damages that can result from actionable conduct. Similarly, the intent or recklessness that generally forms the basis of a punitive damages award in connection with most causes of action is a more integral part of the tort of the intentional or reckless infliction of emotional distress.[17]

16. 12. "Because there is a certain openendedness in the limits of recovery for emotional distress in a retaliatory discharge claim, we decline to automatically allow a claim for punitive damages to be added to the damage picture. We do recognize that where the employer's conduct is wanton, willful or malicious, punitive damages may be appropriate." Syl Pt. 5, *Harless v. First Nat'l Bank*, 169 W.Va. 673, 289 S.E.2d 692 (1982).

13. "In permitting recovery for emotional distress without proof of physical trauma when the distress arises out of the extreme and outrageous conduct intentionally caused by the defendant, damages awarded for the tort of outrageous conduct are essentially punitive damages. Therefore, in many cases emotional distress damages serve the policy of deterrence that also underlies punitive damages." Syl Pt. 8, *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994).

14. In cases *where the jury is presented with an intentional infliction of emotional distress claim*, without physical trauma or without concomitant medical or psychiatric proof of emotional or mental trauma, i.e. the plaintiff fails to exhibit either a serious physical or mental condition requiring medical treatment, psychiatric treatment, counseling or the like, any damages awarded by the jury *for intentional infliction of emotional distress* under these circumstances necessarily encompass punitive damages and, therefore, an additional award for punitive damages would constitute an impermissible double recovery. Where, however, the jury is presented with substantial and concrete evidence of a plaintiff's serious physical, emotional or psychiatric injury *arising out of the intentional infliction of emotional distress*, i.e. treatment for physical problems, depression, anxiety, or other emotional or mental problems, then any compensatory or special damages awarded would be in the nature of compensation to the injured plaintiff(s) for actual injury, rather than serving the function of punishing the defendant(s) and deterring such future conduct, a punitive damage award in such cases would not constitute an

impermissible double recovery. To the extent that this holding conflicts with our decision in *Dzinglski v. Weirton Steel Corp.*, 191 W.Va. 278, 445 S.E.2d 219 (1994), it is hereby modified.

15. Where a jury verdict encompasses damages *for intentional infliction of emotional distress*, absent physical trauma, as well as for punitive damages, it is incumbent upon the circuit court to review such jury verdicts closely and to determine whether all or a portion of the damages awarded by the jury for intentional infliction of emotional distress are duplicative of punitive damages such that some or all of an additional award for punitive damages would constitute an impermissible double recovery. If the circuit court determines that an impermissible double recovery has been awarded, it shall be the court's responsibility to correct the verdict.
(Emphasis added.)

17. 2. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Syllabus Point 6, *Harless v. First Nat. Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982).

3. In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.
Syllabus Points 2 and 3, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998).

For these reasons, we have recognized that there is a greater possibility with intentional or reckless infliction of emotional distress claims of a blurring of punitive and emotional distress damages, and therefore of an impermissible double recovery. Consequently, to guide circuit courts in reviewing punitive damage awards in connection with intentional or reckless infliction of emotional distress claims, Syllabus Points 14 and 15 of *Tudor* were crafted. *See* the emphasized text of Syllabus Points 14 and 15 of *Tudor*, note 16 *supra*.

Syllabus Points 14 and 15 of *Tudor* recognize that in the case of an intentional or reckless infliction of emotional distress claim, if there is not substantial and concrete evidence of a plaintiff's physical, emotional or psychiatric injury, some or all of an emotional distress damages award may actually be punitive damages. If it appears to a trial court that is reviewing punitive damages awarded for the intentional or reckless infliction of emotional distress that there has been such a duplicative or misplaced award, the court should modify the punitive damages award accordingly. *Id.*[18]

The *Vandevender* emotional distress and punitive damages awards, of course, were not based on the tort of intentional or reckless infliction of emotional distress, but rather on claims of termination and retaliation in violation of our human rights and workers' compensation statutes.[19] The specific "double recovery" concerns that arise in the case of the tort of the intentional or reckless infliction of emotional distress that we addressed in Syllabus Points 14 and 15 of *Tudor* are not applicable to the *Vandevender* case.

As set forth in Syllabus Point 12 of *Tudor*, note 16 *supra*, the recovery of both emotional distress damages (where such distress, of course, is proven) and punitive damages (where the employer's misconduct is sufficiently egregious to meet the standards established in our punitive damages jurisprudence) has been held to be authorized in employment law cases generally. *See, e.g., McClung v. Marion County Com'n*, 178 W.Va. 444, 360 S.E.2d 221 (1987) (award of punitive damages in retaliatory discharge case is appropriate where wrongful conduct is wanton, willful or malicious); *Haynes v. Rhone-Poulenc, Inc.*, 206 W.Va. 18, 521 S.E.2d 331 (1999) (punitive damages are available in Human Rights Act cases).[20]

Sheetz's contention, that this Court knowingly sustained a clearly illegal punitive damages award in *Vandevender*, is simply wrong.[21]

**18.** In the *Tudor* opinion we used the phrase "some quantifiable measure of compensatory damages sustained from the intentional infliction of emotional distress" to indicate that the "substantial and concrete" standard must be applied with reasonable latitude and flexibility. 203 W.Va. at 132, 506 S.E.2d at 575. This language does not indicate any internal inconsistency in the *Tudor* opinion, as the district court suggested might be the case.

**19.** Justice Maynard dissented to the Court's opinion in *Vandevender* because he does not believe that punitive damages are available in actions brought under the human rights and workers' compensation statutes as a matter of law, 200 W.Va. at 607–608, 490 S.E.2d at 694–695; and even if such damages were available, he believes that the facts in *Vandevender* did not support such a large punitive damages award. He adheres to these positions. His dissenting opinion in *Vandevender* did not discuss Sheetz's "double recovery" argument. *Id.*

**20.** The record in *Vandevender* contained sufficient evidence so that the trial court did not disturb the jury award to Ms. Vandevender for her actual emotional distress.

**21.** Sheetz's characterization of the *Vandevender* opinion also misapprehends this Court's role in reviewing punitive damages awards. Our jurisprudence establishes the complementary roles of the judge and the jury in the area of punitive damages. A short-hand formula for this relationship is: juries decide, judges review. *See generally, Garnes v. Fleming Landfill*, 186 W.Va. 656, 413 S.E.2d 897 (1992). This Court takes seriously its responsibility to substantively review jury verdicts awarding punitive damages to assure that they are in accord with applicable law. Our extensive discussion in *Vandevender* of the basis for the jury's punitive damages award (and our $466,260.00 downward modification of the award, 200 W.Va. at 606, 490 S.E.2d at 693), shows that this Court looked at the award carefully. We described Sheetz's conduct in the *Vandevender* opinion as "punitive," "deceptive," "willful, mean-spirited acts," 200 W.Va. at 604–606, 490 S.E.2d at 691–693. The learned trial judge in *Vandevender*, who with the jury heard and saw the testimony of the Sheetz personnel who explained their version of what Sheetz had done, set forth a detailed statement of why the judge concluded that the jury's award of punitive damages was appropriate. The punitive dam-

Based on the foregoing discussion, our answer to the district court's fourth certified question is "yes"—however, the specific principles and procedures that are set forth in Syllabus Points 14 and 15 of *Tudor v. Charleston Area Medical Center*, 203 W.Va. 111, 506 S.E.2d 554 (1997) are limited to the tort of the intentional or reckless infliction of emotional distress.

## VI.

### *Conclusion*

Having answered the district court's certified questions, this case is dismissed.

Dismissed.

ages awarded in *Vandevender* were what the jury knew to be about 2 days' gross sales receipts for Sheetz; and within the parameters that we estab-lished in *Garnes, supra*, they were solely within the province of the jury to decide.