# ROBERT M. MUSSELMAN

## V.

# WILLOUGHBY CORPORATION

Record No. 821591

November 27, 1985

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, Thomas, JJ., and Gordon, Retired Justice

338

*Paul M. Peatross, Jr.*, for appellant.
*Edward B. Lowry* for appellee.

COMPTON, J., delivered the opinion of the Court.

This is an attorney malpractice case arising from a real estate transaction. The lawyer represented a corporate client and em-

ployed an untrained paralegal who played a significant role in the closing of the transaction.

The relevant facts mainly are undisputed. Appellee Willoughby Corporation, the plaintiff below, was formed in September 1974 by a large number of holders of O'Neill Enterprises, Inc., real estate bonds which had been secured by undeveloped land known as the "Willoughby Tract," lying in the City of Charlottesville and Albemarle County. When O'Neill Enterprises defaulted and went into bankruptcy, the bondholders formed Willoughby Corporation (hereinafter, the Corporation) in order to sell or develop the property to recoup their investments.

Appellant Robert M. Musselman, a defendant below, represented the bondholders in formation of the Corporation. He became attorney for the Corporation and also served as its Secretary. He was not a member of the Board of Directors. The daily operations of the Corporation were handled from defendant's law office by defendant's employees. One director testified that Musselman took "a very dominant role in the affairs of the corporation" and that the Board looked to defendant for "guidance and leadership."

Upon formation of the Corporation, several tracts of land, residential and commercial, were combined. One of the parcels, an 11.5-acre commercial piece known as Parcel 9, is the subject of this controversy.

In 1976, aware that the Board of Directors wished to sell a portion of the Willoughby Tract, defendant contacted Thomas J. Chandler, Jr., a local real estate broker, who obtained an offer to purchase Parcel 9. The offer was made by Charles W. Hurt, a medical doctor who had been a real estate developer in the Charlottesville and Albemarle County area for a number of years.

Initially, Hurt offered to pay $200,000 for the land. The realtor completed a standard form purchase contract dated March 26, 1976 reciting that amount and, as instructed by Hurt, showed the purchaser to be "Charles Wm. Hurt or Assign." The proposal was delivered to defendant who later asked the realtor to attend a special meeting of the Board of Directors, held at Musselman's law office on April 9, 1976.

Among those present at the meeting were the following Board members: Charles J. Frankel, President, a medical doctor who held a law degree; John H. Robinson; and William Massie Smith,

an attorney. Defendant attended along with Chandler and consultants in the fields of finance and real estate.

The Board minutes of the meeting show that Chandler "presented" Hurt's offer to the Board at the meeting and that the Board fully considered "the advantages and disadvantages" of the proposed sale. The Board decided to accept the offer subject to several modifications, to which Hurt later agreed.

Subsequently, another standard form purchase contract for $215,000 was completed dated May 6, 1976. The purchaser was shown to be "Charles Wm. Hurt or Assigns." The contract provided that the purchaser pay $45,000 cash by the time of closing, scheduled for March 1, 1977, and the balance of $170,000 evidenced by a deferred purchase money note secured by a deed of trust, the terms of which were set forth in an addendum attached to the contract. The contract was executed by Hurt, by Musselman on behalf of the Corporation as corporate Secretary, and by the realtor.

The closing did not occur on March 1, 1977. The delay was attributed, in part, to a disagreement between Hurt's attorney and Musselman about the matter of interest on the debt as it related to the availability of sewer service to the property. The delay in closing was a subject of discussion during a meeting of the Board of Directors on September 1, 1977. Directors present at that meeting were Frankel, Clifford C. Fox, and Lloyd T. Smith, Jr., an attorney with extensive experience in real estate matters. Also present were Musselman and one Stanley K. Joynes, III.

Joynes had been employed by Musselman in June 1977. Joynes had just graduated from college but had no formal training either as a lawyer or a paralegal. His main responsibility, under Musselman's direction, was to "shepherd the Willoughby project along." Joynes attended his first Board meeting in July 1977 and was chosen Assistant Secretary of the Corporation.

In the course of the September 1977 Board meeting, defendant was directed to close the Hurt transaction "as soon as possible." Three weeks later, Stuart F. Carwile, Hurt's attorney, notified Musselman by letter dated September 22, 1977 that his client desired to take title to Parcel 9 as follows:

"Stuart F. Carwile and David W. Kudravetz, as trustees for the Fifth Street Land Trust, pursuant to the terms of a certain land trust agreement dated 22 September 1977."

Carwile advised that after Musselman submitted a draft of the deed, Carwile would forward the proposed deed of trust and note for defendant's approval.

The paralegal then prepared the deed, with "some assistance" from other employees of defendant, in accordance with Carwile's request showing the Land Trust as grantee. Joynes arranged for Frankel to execute the deed, dated October 5, 1977, and on that day participated with Carwile in the closing of the transaction. Musselman was out of town on business on both October 4th and 5th. In the course of the closing on October 5th, the paralegal accepted the deed of trust, and other closing documents prepared by Carwile, which specifically exculpated Hurt from personal liability in the transaction as beneficiary under the land trust.

At this point, we note several important undisputed facts. First, the Board of Directors, upon being advised that Hurt, a man of substantial wealth, was to be the purchaser of Parcel 9, intended to rely on Hurt's potential personal liability as a part of the security for payment of the deferred purchase price. Second, Musselman maintained in his trial testimony that he was authorized by the Board to execute the contract of sale on behalf of the Corporation, and this was not contradicted by any witnesses. In addition, Musselman testified that Joynes, the paralegal, represented the Corporation at the closing, acting within his authority as an employee of defendant. Also, none of the Board members, prior to closing, ever examined either the proposed contract of March 26 or the final contract dated May 6. Moreover, no member of the Board knew before closing that the contract showed the purchaser to be "Hurt or Assigns." In addition, Musselman always was of opinion that the foregoing language in the contract authorized Hurt to escape personal liability under the contract by assigning his rights in the contract to whomever he chose. Also, Musselman never called the language to the Board's attention or explained its meaning to the Board. Finally, the fact that the closing documents exculpated Hurt from personal liability as beneficiary under the land trust was never revealed or explained to the Board of Directors prior to closing.

The Board of Directors met on October 6, the day after closing. Directors present were Frankel, Fox, and Lloyd T. Smith, Jr. Joynes and Musselman were also present, among others. The paralegal reported that the sale of Parcel 9 was complete. When a question arose about the date from which interest was to run,

Smith asked to see Musselman's file and discovered that the property had been conveyed to a land trust and not to Hurt. He examined the note, saw that Hurt had not endorsed it, and thought the situation was "just frightening." Smith also examined the other closing documents and saw they specifically provided that Hurt would have no personal liability. Smith next observed the provisions dealing with release of large portions of the property from the lien of the deed of trust upon receipt of the down payment of $45,000 and he was "really concerned." As a result of the discussion at that meeting, "Musselman stated that he would speak with Dr. Hurt and his attorney . . . in an attempt to clear up these problems." The contract of sale was not exhibited to the Board until the following meeting and no discussion had taken place during the October meeting about the "or Assigns" language.

At the next Board meeting held on November 3, 1977, Lloyd T. Smith and Musselman engaged in a discussion about the effect of the "or Assigns" language. Smith was of opinion, contrary to defendant's view, that use of the term should not permit Hurt to avoid personal liability to the Corporation. According to the minutes, "Mr. Musselman promised to have further research conducted on the question." At this time, the evidence showed, the Board was not overly concerned about the situation. The property had not been released, even though the down payment had been received, and the Board felt it had some bargaining leverage with Hurt.

Two days after the November meeting, Musselman wrote Hurt's attorney in an attempt to resolve the problems that had arisen about the transaction. In the course of the letter, Musselman discussed the "or Assigns" dispute between Board member Smith and Musselman. Defendant asked Hurt's lawyer for reference to "any Virginia authority" bearing on the question, which would support Musselman's view that Hurt could not be held personally liable.

At the Board meeting held on January 26, 1978, Musselman reported that he had negotiated a favorable change in the interest terms on the note. But the Board learned for the first time that Musselman had recorded the deed releasing three front parcels from the tract in question. The deed of partial release was executed by Frankel on the day of closing and by Musselman as a trustee on January 18, 1978, and recorded that day. Musselman

was of the belief that as a trustee under the deed of trust, once the release provisions had been complied with by the purchaser, Musselman had no right to refuse to record the deed of partial release. Upon learning of this development, Smith testified that he was "astonished."

The Land Trust defaulted under the terms of the $170,000 note in respect to an interest payment due on April 1, 1978. Subsequently, this action to recover the principal sum, plus interest, due under the real estate transaction was filed in September 1978 in numerous counts against Hurt and Musselman. The proceeding against Hurt was severed and he was eventually dismissed by the trial court as a party defendant.

The Corporation's action against Musselman was based on alternative theories. The plaintiff charged that defendant breached certain fiduciary duties in his capacity as an officer of the Corporation. In addition, the Corporation alleged that Musselman, in his capacity as attorney for the Corporation was negligent and breached his fiduciary duty as counsel to the Corporation.

At the March 1982 trial, the jury was permitted, under the instructions, to find against defendant in his capacity either as attorney, or as an officer of the Corporation, or as both attorney and officer. The jury found against defendant in his capacity as attorney only and fixed the damages, which were not in dispute, at $243,722.99. This sum represented the principal amount due on the obligation, plus interest through the last day of trial. The trial court entered judgment on the verdict in June 1982, and we awarded defendant this appeal in July 1983.

On appeal, defendant understandably does not seriously contend that the evidence was insufficient to raise a jury question on the issue of negligence and breach of fiduciary duty in his capacity as an attorney. Under the circumstances, Musselman had a duty to disclose anything known to him which might affect his client's decision "whether or how to act." *Owen* v. *Shelton*, 221 Va. 1051, 1054, 277 S.E.2d 189, 191 (1981) (applying the rule in the case of a real estate broker). *See Allen Realty* v. *Holbert*, 227 Va. 441, 446-47, 318 S.E.2d 592, 595 (1984) (applying the rule in the case of accountants). And, contrary to defendant's assertion, a lawyer is not relieved of such duty owed to a corporate client merely because some members of the board of directors are attorneys. Of course, an attorney acting as counsel for a corporate client is not required to explain to the board of directors every sen-

tence in a standard form land contract. But the attorney has a duty to disclose information necessary to enable the client to understand those contract provisions that have the potential for affecting the client adversely.

■ In the present case, the evidence showed that defendant failed to advise the Board before closing that the crucial "or Assigns" language was in the contract, and failed to explain the legal effect of the language when, in defendant's opinion, use of the language enabled Hurt to escape personal liability, a consideration of prime importance to the Board in view of the manner in which the deal was structured. In addition, the evidence demonstrated that Musselman permitted an untrained paralegal to accept formulation of final documents that further exculpated Hurt, without bringing such documents to the Board for approval. In sum, the evidence was sufficient to support the jury's finding that defendant breached his duty as an attorney to adequately inform his client and that such breach was a proximate cause of plaintiff's loss.

■ Inexplicably, defendant's main contentions on appeal are based on the faulty premise that he lacked corporate authority to act in executing the contract containing the "or Assigns" language and in completing the conveyance to a land trust, while, in the process, exculpating Hurt from personal liability. This argument is totally inconsistent with defendant's trial testimony that he did, in fact, have authority to execute the contract. It is also at odds with the uncontroverted evidence about defendant's "dominant role" in acting for the Corporation. This idea relies on the following circular reasoning: Even though specifically empowered to execute the contract, defendant had no authority to permit conveyance to a land trust, because the Board of Directors was unaware of the crucial contract provisions, which Musselman had the duty to disclose to the Board in his capacity as attorney. Building on this infirm basis, defendant contends that the Board should immediately have rescinded the transaction upon discovery of the "problem" at the meeting the day after closing and, in failing to rescind, the Corporation should be deemed to have ratified Musselman's unauthorized acts. As a part of this argument, defendant complains that the trial court misdirected the jury because it granted instructions which failed to recognize this theory and refused to grant tendered instructions which would have permitted the jury to consider the issue of ratification.

There is no merit to this argument. Musselman, being authorized to execute the contract and to close the transaction, had the responsibility as counsel to advise his client, immediately upon discovery of the "problem," that it should attempt to rescind the transaction, if we assume an attempt at rescission would have been successful. Instead, defendant at no time advised the Board of Directors that it should pursue rescission. At the meeting on October 6, the day after closing, Musselman merely stated that he would "attempt to clear up these problems" by speaking with Hurt and his attorney. At the next Board meeting, Musselman only promised to perform further research on the "or Assigns" question. All the while, the Board justifiably expected that the transaction would be satisfactorily completed and that Hurt would consent to become personally bound in the event of default. Finally, in January of 1978, the Board's position was made even worse when three parcels in the tract were released as the result of the recording of the deed of partial release. If Musselman did not realize the Corporation may have had the right to rescind, he will not be heard to complain that the Board should have realized it on its own. And if he knew the Board may have had the right to rescind, he will not be permitted to have withheld such advice from the Board members and then contend they have ratified his conduct by not rescinding on their own. Therefore, the trial court properly ruled the theory of ratification was not applicable and that defendant was not entitled, under the circumstances, to have that issue submitted to the jury.*

For these reasons, the judgment of the trial court will be

*Affirmed.*

* There is no merit to defendant's assignment of error which asserts the trial court erred in refusing defendant's exhibit 9, an August 1978 letter from Hurt to plaintiff's Board of Directors offering to "unwind" the transaction upon return of the payment of $45,000. In addition, this issue was not mentioned during oral argument of the appeal. Also, the record fails to show the exhibit was refused or that the jury was told to disregard it. Rather, the record affirmatively shows the exhibit was admitted in evidence.

The letter was received in evidence over plaintiff's objection during the second day of trial. Appendix at 200. Later, the exhibit was discussed again and, upon plaintiff's further objection, the trial court said the letter was irrelevant and indicated it would "so instruct the jury later on." Appendix at 314. The record on appeal does not disclose that thereafter the jury was ever told to disregard the letter. Indeed, the letter is among the admitted exhibits in the record and is initialled by the trial judge, a further indication that the exhibit was not excluded.