IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0361

_____

FILED
November 2, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

RICHARD OTTO and
PATRICIA OTTO,
Petitioners

v.

CATROW LAW PLLC,
Respondent

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Christopher Wilkes, Judge
Civil Action No. 17-C-270

AFFIRMED

_____

Submitted: September 2, 2020
Filed: November 2, 2020

Christian J. Riddell, Esq.               Susan R. Snowden, Esq.
Stedman & Riddell, PLLC                   JACKSON KELLY PLLC
Martinsburg, West Virginia               Martinsburg, West Virginia
Counsel for Petitioners                   Counsel for Respondent

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.

JUSTICE HUTCHISON dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.  "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed."  Syllabus Point 1, *Wickland v. American Travellers Life Insurance Company*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

2.  "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong."  Syllabus Point 6, *Helmick v. Potomac Edison Company*, 185 W. Va. 269, 406 S.E.2d 700 (1991), *cert. denied,* 502 U.S. 908, 112 S. Ct. 301, 116 L.Ed.2d 244 (1991).

3.  "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 4, *Smith v. Clark*, 241 W. Va. 838, 828 S.E.2d 900 (2019).

4.  "Generally, in a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate

i

cause of loss to the plaintiff." Syllabus Point 1, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

5.      "If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure." Syllabus Point 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

6.      "A motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice." Syllabus Point 2, *Mey v. Pep Boys-Manny, Moe & Jack,* 228 W. Va. 48, 717 S.E.2d 235 (2011).

7.      "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient

showing on an essential element of the case that it has the burden to prove." Syllabus Point

2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

Armstead, Chief Justice:

Sadly, Petitioners in this action were clearly victims of a phishing/spoofing scheme.[1] An unidentified scammer was able to impersonate Petitioners' real estate agent and Petitioners wired to the scammer a total sum of $266,069.22, which has never been recovered. We sympathize with Petitioners. However, under the facts of this case, they were unable to establish that Respondent breached any duty owed to them. Therefore, for the reasons stated herein, we affirm the circuit court's denial of Petitioners' motion to alter or amend that judgment.

---

[1] The Federal Bureau of Investigation defines the terms "phishing and spoofing" as:

> **Phishing/Spoofing:** Both terms deal with forged or faked electronic documents. Spoofing generally refers to the dissemination of e-mail which is forged to appear as though it was sent by someone other than the actual source. Phishing, also referred to as vishing, smishing, or pharming, is often used in conjunction with a spoofed e-mail. It is the act of sending an e-mail falsely claiming to be an established legitimate business in an attempt to deceive the unsuspecting recipient into divulging personal, sensitive information such as passwords, credit card numbers, and bank account information after directing the user to visit a specified website. The website, however, is not genuine and was set up only as an attempt to steal the user's information.

*Common Scams and Crimes, Scams and Safety*, Federal Bureau of Investigation, https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/internet-fraud (last accessed October 26, 2020).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

. In 2015, Petitioners Richard and Patricia Otto were residents of the State of Wisconsin and sought to relocate to the Eastern Panhandle of West Virginia. To assist them with that process, they contracted with Lynn Frum ("Frum"), a real estate agent employed with Coldwell Banker Innovations ("Coldwell").[2]

Petitioners located a home in the Falling Waters area of Berkeley County that they desired to purchase. An offer on this home was made and accepted in the amount of $265,000.00, which amount Petitioners intended to pay in cash. To handle the closing, Respondent Catrow Law PLLC was retained. Thereafter, Respondent set the closing for October 26, 2015.

Leading up to closing, Respondent sent the wiring instructions for the settlement funds to Frum[3] via encrypted email. These instructions identified the account name into which the purchase money was to be transferred as "Catrow Law PLLC Real Estate Trust Account" along with the account and routing numbers for an account at "MVB Bank, Inc." in Fairmont, West Virginia. Frum printed out the wiring instructions, scanned them, and sent them to Petitioners via unencrypted email.

---

[2] Both Frum and Coldwell were initially parties to this matter, but the claims against them were settled.

[3] It is undisputed that Respondent only communicated with Petitioners through Frum.

In fact, in the days prior to closing, multiple encrypted emails were exchanged between Respondent and Frum and multiple unencrypted emails were exchanged between Frum and Petitioners. On October 20, 2015, an email purportedly from Frum's email address to Petitioners started a series of emails[4] between Petitioner Richard Otto and the scammer:

> The title company need you to Wire the closing funds, They want to ensure they receive the funds before closing this will enhance a smooth and early closing on this property also buyer to get a credit of $5000 to the buyer since we will close before the closing date, Please kindly let me know if you can make the closing funds so i can send over the Wire instructions .

Petitioner Richard Otto responded to this email. However, the email address to which the response was sent (lfrurn@gmail.com) was not the same email address from which the initial email purportedly from Ms. Frum was sent that day (lfrum@cbimove.com).[5] Indeed, every email from the scammer appeared on its face to be from lfrum@cbimove.com, but when a reply was generated to each email, such replies went to lfrurn@gmail.com. This went unnoticed by Petitioners. In response, Petitioner Richard Otto asked for confirmation of the amount to be wired, when the wire should be sent, and questioned the $5,000 credit. The scammer replied that:

> The $5,000 will be credited to you on closing day, This is coming up as a requirement because the title company would

---

[4] All emails quoted herein are verbatim and some include spelling and grammatical errors.

[5] It is undisputed that Frum did not use and never owned the email address lfrurn@gmail.com.

like to record the closing funds earlier than we expected, the closing funds is being wired to the title's trust account which will be provided soon as you agree to this, The amount you will wire tomorrow is: $266,069.22, I will forward you the account today so you can make the wire tomorrow morning.

Congrats.

Replying to this email, Petitioner Richard Otto wrote:

The credit kind of makes the $20/day interest seem like a pretty good deal. Does this mean we might walk away with a check Monday as that figure looks familiar?

I've already transferred the line of credit to our checking so that's sitting with $286,000 in it – which is a tad more than usual. From what we've been told, we'll just need to stop at the bank tomorrow to initiate the transfer.

This email also included the account and routing numbers for Respondent's real estate trust account, which had been sent to him from Frum via unencrypted email.

Subsequently, Petitioners received this email:

Rick,

I just confirm from the title company, The closing funds should be wired to the title's trust account which, I will email you the account when they confirm it to me , once payment is made tomorrow , early recording of the transaction and a payment receipt will be issued when it has been received also the wire fees can be deducted from the closing costs too.

I will forward you the account details shortly.

Followed by this email:

> Rick,
>
> Wire $266,069.22 to the title's trust account, Let me know if
> you receive it.
>
> Congrats.

This email included wiring instructions identifying the account name as "DRC Global Services Inc," the bank as "Wells Fargo Bank" in Albany, New York, and contained different account and routing numbers than those previously transmitted. Petitioner Richard Otto acknowledged this discrepancy:

> Just printed it and it is a different bank and account than before.
> I'll shred the other to avoid confusion– which is way too easy
> at this point.
>
> Rick

The scammer replied:

> Okay, Once payment is made tomorrow, Please send me the
> proof of payment so i can file it also send it to the title
> company.
>
> Thank you
>
> Congrats.

The following day, Petitioners presented the new wiring instructions to their bank, instructing them to transfer funds from their account to the scammer's account. The scammer later emailed Petitioners to verify that the funds were wired and Petitioners

replied that they had been. Several additional emails not relevant to our analysis were exchanged.

On the date appointed for closing, Respondent revealed that the funds had not been received in its trust account. At that time, it became apparent that Petitioners were victimized by a scammer and law enforcement was contacted.

Petitioners then filed suit in the Berkeley County Circuit Court against Frum, Coldwell, and Respondent. Following the settlement of their claims against Frum and Coldwell, Petitioners, with leave of the circuit court, filed an amended complaint, which alleged that Respondent had breached its duties in the following ways:

> a) Prior to wiring any funds, [Petitioners] should have been personally contacted by [Respondent], or, at a minimum, [Petitioners] should have been advised and alerted by [Respondent] to call her office and confirm the instructions.
> b) Although [Respondent] appeared to have used an encrypted email, [Respondent], knowing full well that wiring instructions were to be communicated via email, should have taken any precautions to determine if Coldwell['s] . . . and the [Petitioners'] emails were encrypted and otherwise secured.
> c) [Respondent] should have informed the [Petitioners] as to the prevalence of wire fraud schemes, and that if an email seemed suspicious, they should take no action until they confirmed, by independent means, that the communication was legitimate.

Respondent sought summary judgment on the grounds that that Petitioners had not, as a matter of law, established the elements of legal malpractice. Specifically,

6

Respondent challenged that it had not neglected a legal duty and was not the proximate cause of Petitioners' damages.[6]

In response below, Petitioners argued that they could demonstrate two ways in which Respondent had neglected its duty. First, Petitioners offered the expert opinion of lawyer T. Summers Gwynn ("Gwynn")[7] on the applicable standard of care. Second, Petitioners alleged that bulletins sent to Respondent as an agent/attorney for Old Republic Title Insurance Company ("Old Republic") warning of phishing scams gave rise to a duty for Respondent to warn Petitioners against someone substituting fake wiring instructions into the transaction.

The circuit court found that Gwynn was not competent to give an opinion as to the standard of care under West Virginia law. "Gwynn placed a disclaimer in his retainer agreement . . . that stated that he was unable to render an opinion as to West Virginia law." Because of these limitations, Gwynn could not demonstrate that Respondent's actions "were a 'departure by members of the legal profession in similar circumstances.'" Similarly, the circuit court found that the "bulletins and notices . . . from [Old Republic] do not prove that [Respondent] breached any duty of care it owed [Petitioners]."

---

[6] As we find that Petitioners did not establish Respondent neglected a legal duty, we decline to discuss other issues raised below or other grounds raised in this appeal.

[7] Gwynn is a lawyer admitted to practice in the State of Maryland.

Based upon this reasoning, the circuit court found that Petitioners did not establish that Respondent had breached a reasonable duty as a matter of law and granted Respondent's motion for summary judgment. Following the grant of summary judgment, Petitioners filed a motion pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure to alter or amend the circuit court's summary judgment order. The circuit court denied that motion and this appeal followed.

## II. STANDARD OF REVIEW

In reviewing the denial of a motion to alter or amend judgment:

> The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syllabus Point 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998). Here, the grant of summary judgment was the "judgment upon which the motion is based," and the standard of review of an order granting summary judgment is *de novo*. *See* Syllabus Point 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

We are also called upon to examine the circuit court's ruling regarding the testimony of an expert witness. Such determinations are "within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong." Syllabus Point 6, in part, *Helmick v. Potomac Edison Co.*, 185 W. Va. 269, 406 S.E.2d 700 (1991), *cert. denied,* 502 U.S. 908, 112 S. Ct. 301, 116 L.Ed.2d 244 (1991). Also, "[t]he

8

action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Point 4, *Smith v. Clark*, 241 W. Va. 838, 828 S.E.2d 900 (2019).

Thus, we will give *de novo* review to the circuit court's rulings on the underlying motion and review the disregard of Petitioners' expert under an abuse of discretion standard.

## III. ANALYSIS

To sustain a legal malpractice claim, Petitioners must establish three things:

> Generally, in a suit against an attorney for negligence, the plaintiff must prove three things in order to recover: (1) the attorney's employment; (2) his/her neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.

Syllabus Point 1, *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005). Because "[d]amages arising from the negligence of an attorney are not presumed, and a plaintiff in a malpractice action has the burden of proving both his loss and its causal connection to the attorney's negligence," Syllabus Point 3, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990), all three *Calvert* elements must be satisfied for Petitioners to prevail. Thus, the failure of Petitioners to establish any one of those three elements is fatal to their claim. As we discuss below, we believe that Petitioners cannot demonstrate that Respondent "neglect[ed] . . . a reasonable duty." Syllabus Point 1, *Calvert*.

9

Petitioners raise two arguments that they claim demonstrate Respondent breached a duty. First, Petitioners argue that the circuit court impermissibly refused to accept Gwynn's expert testimony on the standard of care. Second, Petitioners raise the same argument made to the circuit court that Respondent's duty arose because it was a title agent for Old Republic who was sent bulletins warning of the existence of phishing schemes arising out of real estate transactions. From those bulletins, Petitioners allege, Respondent had a duty to warn Petitioners of the potential of phishing scams.

1. Petitioners' Expert on Standard of Care

We begin by examining the circuit court's ruling on Petitioners' expert. Our Rules of Evidence provide:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

W. Va. R. Evid. 702(a). We have previously held that "[e]xpert testimony is admissible in legal malpractice actions." Syllabus Point 6, *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W. Va. 318, 547 S.E.2d 256 (2001). We have also held that "[w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Syllabus Point 5, *Mayhorn v. Logan Med.*

10

*Found.*, 193 W. Va. 42, 454 S.E.2d 87 (1994). Thus, we will not disturb the circuit court's ruling, unless it can be shown that the circuit court abused its substantial discretion.

Here, the circuit court found that Petitioners' expert "possessed no knowledge whatsoever with respect to West Virginia law or the standards and actions routinely followed by real estate practitioners in the state." This was based upon the uncontroverted testimony of Gwynn who said, "I don't have any opinion about what should be done in West Virginia." Additionally, Gwynn placed a disclosure in his written retention agreement that was required to be made "whenever testimony of [Gwynn] is given or referenced," that said:

> **IT IS UNDERSTOOD BY ALL PARTIES HERETO THAT ANY OPINIONS AND TESTIMONY OF THE UNDERSIGNED GIVEN PURSUANT TO THIS ENGAGEMENT ARE NOT REPRESENTED TO BE EXPERT OPINIONS OF WEST VIRGINIA LAW. THE UNDERSIGNED IS NOT A MEMBER OF THE WEST VIRGINIA BAR, AND HAS NEVER PRACTICED LAW IN WEST VIRGINIA.**

We have held that the standard of care required by an attorney is "to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances." Syllabus Point 1, in part, *Keister v. Talbott*, 182 W. Va. 745, 391 S.E.2d 895 (1990). Based upon the limitations contained in the Gwynn's retention agreement and his own testimony, we agree that he was not a competent

11

expert witness to testify as to the applicable standard of care under West Virginia law.[8]

Accordingly, given the standard of review, our prior law, and the clear limitations contained in the expert report, we cannot say that the circuit court abused its discretion in disregarding Gwynn's expert opinion on the applicable standard of care.

2. Respondent's Reasonable Duty

When Respondent provided the wiring instructions to Frum, Respondent took steps to encrypt its email containing that information. The contents of that email were highly sensitive and Respondent reasonably expected the information to remain confidential by use of encryption technology. Indeed, Petitioners concede that Respondent was not responsible for the hack because they pled in their amended complaint that "the money was diverted when the hacker was able to intervene in email correspondences between" Frum and Coldwell. Petitioners, however, contend that in addition to the encryption precautions it undertook, Respondent had a duty to warn Petitioners of phishing schemes that could target Petitioners.

---

[8] We are aware that we have abrogated the locality rule as a prerequisite to expert qualification in medical malpractice matters. *See* Syllabus, *Paintiff v. City of Parkersburg*, 176 W. Va. 469, 345 S.E.2d 564 (1986); Syllabus Point 6, *Hundley v. Martinez*, 151 W. Va. 977, 158 S.E.2d 159 (1967).

Under the specific facts of this case, we believe Gwynn's self-inflicted limitations and his testimony noted above make it plain that the circuit court did not abuse its considerable discretion in disregarding his testimony. Our decision here should not be construed as either a tacit adoption of the locality rule in legal malpractice matters or a modification of our many well-reasoned decisions on medical malpractice.

To demonstrate that duty, Petitioners aver that Respondent was a title agent for Old Republic and point to bulletins that were issued by that company warning of phishing schemes targeting closing funds. On this issue, the circuit court found that Petitioners "failed to present any genuine issue of material fact which would demonstrate [Respondent] breached a duty of care owed to them associated with the conveyance of the wiring instructions." We agree.

We acknowledge that:

> An attorney owes to his client the high duty to diligently, faithfully and legitimately perform every act necessary to protect, conserve and advance the interests of his client. No deviation from that duty can be permitted. That principle of conduct is a stern and inflexible rule controlling the relationship of attorney and client so long as the relation exists.

*Bank of Mill Creek v. Elk Horn Coal Corp.,* 133 W.Va. 639, 657, 57 S.E.2d 736, 748 (1950). That duty requires a lawyer "to disclose **anything known to him** which might affect his client's decision whether or how to act." *Musselman v. Willoughby Corp.*, 230 Va. 337, 343, 337 S.E.2d 724, 728 (1985) (emphasis added) (internal quotations omitted). Therefore, Petitioners had to demonstrate that Respondent knew of these bulletins in order to create a reasonable duty. On this issue, the circuit court found that Petitioners:

> [H]ave not presented any evidence to demonstrate that [Respondent] actually received any bulletins or notices concerning wire fraud transfer in 2015, much less the four notice/bulletins produced as evidence by Plaintiffs. Moreover, the four notice/bulletins produced by [Petitioners] do not specify they were sent to attorneys in West Virginia.

13

When Respondent filed its properly supported motion for summary judgment below, it shifted the burden to Petitioners to produce evidence rebutting the motion:

> If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syllabus Point 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

The evidence Petitioners presented to the circuit court about these bulletins consisted of the following uncontested facts: Respondent was a title/agent for Old Republic; Respondent admitted to receiving updates from Old Republic from time to time regarding "important information and events in the real estate industry;" Old Republic sent out bulletins that warned of the potential phishing scheme targeting real estate closings. Yet, Petitioners did not take the extra step to produce any evidence that Respondent actually knew about these specific bulletins warning of phishing schemes.

Petitioners attempted to correct their failure to establish a question of material fact as to Respondent's knowledge of the bulletins by submitting a motion to alter or amend, arguing that Petitioners had identified agents of Old Republic in their witness disclosures to testify about the bulletins. In its order denying that motion, the circuit court correctly reasoned that Petitioners knew of these witnesses prior to the filing of their

14

response to the summary judgment motion but did not provide any evidence from them as to Respondent's knowledge of the bulletins. This flaw was not correctable on a motion to alter or amend:

> A Rule 59(e) motion may be used to correct manifest errors of law or fact, or to present newly discovered evidence. *See In re Transtexas Gas Corp.*, 303 F.3d 571 (5th Cir.2002). **A motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued.** *See Freeman v. Busch, 349 F.3d 582* (8th Cir.2003) ("Arguments and evidence which could, and should, have been raised at an earlier time in the proceedings cannot be presented in a Rule 59(e) motion.*"); Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605–606 (4th Cir.1999) (issue presented for first time in Rule 59(e) motion is not timely raised); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (Rule 59(e) motion cannot raise arguments that were not raised prior to judgment); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 3–4 (1st Cir.1998) (new legal theory as to liability may not be raised in motion for reconsideration); *Stone v. Wall*, 135 F.3d 1438, 1441–1442 (11th Cir.1998) (argument that law of other jurisdiction should have applied could not be raised in Rule 59(e) motion*); Global Network Techs., Inc. v. Regional Airport Auth.*, 122 F.3d 661, 665–666 (8th Cir.1997) (**evidence that could have been introduced prior to judgment may not be offered through Rule 59(e) motion**).

*Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 56, 717 S.E.2d 235, 243 (2011) (emphasis added). In *Mey* we held:

> A motion under Rule 59(e) of the *West Virginia Rules of Civil Procedure* should be granted where: (1) there is an intervening change in controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a clear error of law or (4) to prevent obvious injustice.

Syllabus Point 2, *Mey*.

15

Indeed, in response to the motion for summary judgment, Petitioners did not demonstrate Respondent received the bulletins or that they had even been sent to lawyers in West Virginia.

> Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syllabus Point 2, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995). To overcome Respondent's motion for summary judgment, Petitioners had the burden of establishing the existence of a question of fact as to whether Respondent had neglected a reasonable duty. They intended to show such question with evidence that these bulletins created that duty. However, they produced no evidence in response to the summary judgment motion supporting the essential element that Respondent received or saw these bulletins. Simply stated, Petitioners did not present evidence demonstrating the existence of a material question of fact regarding Respondent's knowledge of the bulletins. Thus, they failed to overcome Respondent's motion for summary judgment on the essential element of duty.[9]

Clearly, Petitioners knew of the existence of these witnesses prior to filing their response to Respondent's motion for summary judgment but included nothing in that response demonstrating that these witnesses could establish any material fact regarding

---

[9] We make no determination as to whether receipt of these bulletins would create the duty asserted by Petitioners.

Respondent's knowledge of the bulletins. This is precisely why, in the order denying Rule 59(e) relief, the circuit court found that Petitioners "failed to offer any explanation as to why this evidence could not have been presented in their Response." The circuit court was correct in denying the motion to alter or amend because Petitioners knew of the witnesses prior to entry of summary judgment and did not attach any affidavits or other evidence from them as to what their testimony would be on this issue.

Thus, we conclude that the circuit court was correct in granting summary judgment on this issue because Petitioners did not meet their burden of production. The failure of Petitioners to do so – when the evidence they should have submitted was available to them when they filed their response to the motion for summary judgment – renders the circuit court's denial of relief under West Virginia Rule of Civil Procedure 59(e) justified.

## IV. CONCLUSION

For the foregoing reasons, we affirm the circuit court's denial of the motion to alter or amend its previous grant of summary judgment in favor of Respondent.

Affirmed.

17