COURT OF APPEALS OF VIRGINIA

Present:   Judges Friedman, Frucci and Senior Judge Humphreys
Argued at Fredericksburg, Virginia

PUBLISHED

MELISSA TRENT

v.          Record No. 0810-23-4

ONDERLAW, LLC, d/b/a
 THE ONDER LAW FIRM

OPINION BY
JUDGE STEVEN C. FRUCCI
JUNE 25, 2024

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Katarina A. Nguyen (Steven A. Krieger; Steven Krieger Law, PLLC,
on briefs), for appellant.

H. Robert Yates, III (Joseph M. Rainsbury; O'Hagan Meyer, PLLC,
on brief), for appellee.

Melissa Trent appeals the circuit court's order sustaining OnderLaw, LLC's ("OnderLaw")

demurrer to her claim for legal malpractice. Trent challenges the circuit court's ruling that the

retainer agreement's terms foreclosed her asserted claims for malpractice. We hold that Trent

sufficiently alleged facts in her complaint regarding OnderLaw's duty to timely disclose pertinent

facts, discovered unilaterally by OnderLaw, that substantially affected the viability of her claim

and the limited retainer agreement signed by the parties so that it should have survived the

demurrer at issue. We thus reverse the circuit court's judgment and remand this case for further

proceedings consistent with this opinion.

## I. BACKGROUND

In reviewing a circuit court's decision on a demurrer, we "accept as true all factual

allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to

the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v.*

*Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).  We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged."  *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)).  "But we are not bound by the pleader's conclusions of law that are couched as facts."  *Wright v. Graves*, 78 Va. App. 777, 781 (2023).  We also "disregard allegations that "are inherently impossible[] or contradicted by other facts pleaded" and reject 'inferences [that] are strained, forced, or contrary to reason.'"  *New Age Care, LLC v. Juran*, 71 Va. App. 407, 429 (2020) (second alteration in original) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 & n.2 (2018)).  "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process."  *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

In September 2016, Trent had surgery on her left knee to install a "Sigma" knee replacement device, which was manufactured and sold by "DePuy Orthopaedics, Inc."  Notably, in addition to Sigma, DePuy also sells a different knee replacement called "Attune" that had not been used for Trent's surgery.  Her surgeon used a DePuy "affixing cement" to secure the device.  After the surgery, the cement extruded from the sides of the joint and failed to hold the Sigma device in place.  As a result, Trent experienced swelling and pain.  She had difficulty walking, sleeping, and maintaining her home.  She also missed work.  Despite additional surgery to correct the damage, the Sigma device detached from Trent's knee.  She lost support in the knee joint, experienced loss of balance and repeated falls, and developed "severe hip and back pain."

In October 2017, Trent had a third and final surgery to install a device called "Genesis II," which was manufactured by a different company, Smith & Nephew, and entirely replaced her knee.

Trent's pain decreased but some effects of the earlier surgeries never subsided. She continued to experience "a limp, . . . hip pain, and constant general discomfort."

On August 6, 2018, Trent executed a one-page retainer agreement with OnderLaw. Although Trent's surgeries had involved the Sigma system, the agreement provided that OnderLaw would represent Trent "in all claims for damages arising out of the use of a [DePuy] Attune knee replacement system." Accordingly, the parties' retainer agreement contained a condition precedent to the parties' relationship moving forward in that OnderLaw would not represent Trent to any degree if the device at issue was not an Attune device. OnderLaw informed Trent that OnderLaw would evaluate her case and then contact her to advise her about the viability of her claim.

Trent provided OnderLaw with all the records she possessed relating to her claim by September 2018. On December 12, 2018, Trent received a notice from OnderLaw entitled "Defective Knees Update." The notice stated that OnderLaw was "accepting defective knee cases for any knee implant which required a revision surgery within 6 years of the initial replacement and" caused "pain, a sensation of heat at the joint, hyperextension, knee instability, and swelling." The notice did not include any advice or information addressing Trent's case evaluation. Trent also received a regular newsletter from OnderLaw.

In July 2019, Trent requested an update on her case. A paralegal responded that OnderLaw had received Trent's medical records from her health care providers and that her case was "in line for review by an attorney." The paralegal also noted that Trent appeared to "have a Smith & Nephew Genesis II implant." Trent responded that her first two surgeries "were the J & J Depuy [sic] which resulted in complications."[1] The paralegal confirmed, "[y]es, that is correct." The paralegal also stated that an "attorney will have access to all your medical records when evaluating

_____

[1] According to the second amended complaint, DePuy is a wholly owned subsidiary of Johnson & Johnson, Co. ("J & J").

your case," and upon finishing the evaluation, OnderLaw would advise her "how we will proceed." Trent understood "we" to mean "the team of [Trent] and [OnderLaw] working together."

On February 2, 2021, nearly two years and six months after signing the retainer agreement, Trent received a letter from OnderLaw informing her that the Smith & Nephew device used in her third surgery "was not a covered device" and that "OnderLaw was not interested in pursuing her claim." By that time, however, the statutory deadline for Trent to bring her claims against DePuy had passed.[2] Trent then filed a claim for legal malpractice.[3]

Trent's second amended complaint alleged that the DePuy products used in the first two surgeries were not reasonably safe and that she was not warned of the risks of using them. Therefore, Trent claimed that she had viable product liability claims for damages against DePuy arising from her use of the products and the resulting injuries. She asserted that OnderLaw received "all medical records" from her medical providers by July 2019 and had "full knowledge of what products had been used in her surgeries." Trent alleged that, despite this, OnderLaw "failed to properly and timely evaluate" her case and inform her of the status of her case, which ultimately prevented her from exercising her rights regarding a potential claim. Trent also alleged that through these failures OnderLaw breached the retainer agreement and the firm's "duty to perform its

---

[2] Trent alleges that her claims expired "not later than November 2019." "Whether a claim is barred by the statute of limitations is a question of law." *Tuck v. Goodyear Tire & Rubber Co.*, 47 Va. App. 276, 284 (2005). While this Court is not bound by a party's legal conclusions, OnderLaw did not dispute this conclusion in its demurrer. *Wright*, 78 Va. App. at 781. "[W]e may affirm an order sustaining a demurrer only on a ground that the defendant raised in the [circuit] court." *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023); *see* Code § 8.01-273(A) (stating that "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court"). Thus, we accept this allegation for the purpose of deciding whether Trent has successfully stated a claim.

[3] Trent's original complaint included a legal malpractice claim against another law firm that she had retained to represent her in a claim for medical malpractice against the doctor who performed her first two surgeries. The circuit court subsequently entered a consent order dismissing without prejudice Trent's complaint against that firm.

- 4 -

promised work in a professional, timely, diligent fashion," and violated the firm's professional ethical duties.

Trent acknowledged that the written retainer agreement limited the scope of OnderLaw's evaluation of claims "arising out of the use of a [DePuy] Attune knee replacement system." She alleged, however, that the parties modified the retainer agreement, or formed a new retainer agreement, to include the Sigma device through their communications in 2018 and 2019. Trent argued alternatively that OnderLaw had a duty to inform her of the status of her potential claims without modification of the retainer agreement.

OnderLaw demurred, arguing that the retainer agreement was not modified by the parties' email communications or the "Defective Knees Update" notice. OnderLaw further argued that, because the unmodified retainer agreement covered only claims related to the Attune device, Trent did not sufficiently plead that OnderLaw owed her a duty concerning the Sigma device.

After a hearing, the circuit court ruled that the parties had "a written agreement that limit[ed] the scope of representation" to "claims against the manufacturers and promoters of DePuy Attune Knee Replacement Systems." The circuit court acknowledged that attorneys owe a duty of care to their clients but ruled that the terms of the retainer agreement "foreclose[d] claims as to the general duty to advise" Trent. The circuit court thus sustained OnderLaw's demurrer, leading to this appeal.

## II. ANALYSIS

Trent challenges the circuit court's ruling that the retainer agreement's terms foreclosed her asserted claims for malpractice.[4] Alternatively, she argues that the circuit court erred by finding

---

[4] During the demurrer hearing, Trent argued in part that "OnderLaw owed a duty of care to Trent to represent her diligently" and "had a reasonable duty of care to advise her as to the viability of her claim in a diligent and timely manner." In ruling on the issue, the circuit court found that while there had been a "breach of the Rules of Professional Conduct," "there isn't a cause of action that can be pursued under the claims asserted," as the terms of the retainer agreement foreclosed OnderLaw's duty to advise Trent.

that the parties had not modified the retainer agreement, contrary to her factual allegations.[5] Because we find Trent sufficiently alleged facts, within the context of the demurrer, regarding OnderLaw's duty to disclose information (even if it was not modified) we reach only the first issue. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (stating that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

We review de novo a circuit court's decision sustaining a demurrer. *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023). "The purpose of a demurrer is to determine whether a [complaint] states a cause of action upon which the requested relief may be granted. A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Taylor*, 301 Va. at 357 (alteration in original) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). "On appeal, a plaintiff attacking a [circuit] court's judgment sustaining a demurrer need show only that the court erred, not that the plaintiff would have prevailed on the merits of the case." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713 (2006).

A plaintiff alleging legal malpractice must plead facts showing "the existence of an attorney-client relationship which gave rise to a duty, breach of that duty by the defendant

---

[5] On appeal, OnderLaw argues that Trent failed to state a claim due to there being no "meeting of the minds" between the parties about the subject of the representation. Thus, OnderLaw concludes that there was no valid contract and no attorney-client relationship upon which a malpractice claim could be based. We do not consider this argument, however, because OnderLaw did not include it in its demurrer. *See* Code § 8.01-273(A) (stating "[a]ll demurrers shall be in writing and shall state specifically the grounds on which the demurrant concludes that the pleading is insufficient at law. No grounds other than those stated specifically in the demurrer shall be considered by the court."); *Theologis*, 76 Va. App. at 604 (noting that Code § 8.01-273 "bar[s] consideration on appeal of an argument that was not included in the defendant's demurrer"). Moreover, OnderLaw neither objected nor assigned cross-error to the circuit court's finding that the parties entered a written retainer agreement which "limit[ed] the scope of representation." *See State of Maine v. Adams*, 277 Va. 230, 242 (2009) (finding that "when a party fails to assign error to a particular holding by the circuit court, that holding becomes the law of the case and is binding on appeal").

attorney, and that the [pecuniary] damages claimed by the plaintiff client [were] proximately caused by the defendant attorney's breach." *Wright*, 78 Va. App. at 784 (alterations in original) (quoting *Desetti v. Chester*, 290 Va. 50, 56 (2015)); *see* Code § 54.1-3906 (stating "[e]very attorney shall be liable to his client for any damage sustained by the client through the neglect of his duty as such attorney"). The only issue before this Court is whether Trent sufficiently pleaded facts regarding OnderLaw's duty to timely inform Trent of the status of her claim to survive the demurrer. Whether a duty exists in a legal malpractice claim is a question of law.[6]

Generally, attorneys have a duty to "exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed." *Smith v. McLaughlin*, 289 Va. 241, 253 (2015) (quoting *Ripper v. Bain*, 253 Va. 197, 202-03 (1997)). "The same standard of reasonable care applies to all attorneys in the performance of their professional duties, but the contractual obligations will, of course, vary widely from client to client and case to case." *Ortiz v. Barrett*, 222 Va. 118, 128 (1981). An attorney's duties in each case are thus defined both by a broadly applicable standard of professional reasonableness as well as the contours of the attorney-client relationship at issue. *Id.*

---

[6] Legal malpractice claims are contract claims that "have strong tort law connotations," and thus involve a mixture of tort and contract principles. *Smith v. McLaughlin*, 289 Va. 241, 256 (2015); *see, e.g.*, *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 249 Va. 426, 432 (1995) (holding that contributory negligence is available as a defense in legal malpractice actions); *Shipman v. Kruck*, 267 Va. 495, 501 (2004) (stating "[t]he statute of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice actions sound in tort, it is the contract that gives rise to the duty"). Generally, "[t]he issue whether a legal duty in tort exists is a pure question of law." *Parker*, 296 Va. at 348 (quoting *Kellermann v. McDonough*, 278 Va. 478, 487 (2009)). Interpretation of a contract is also a question of law. *CSE, Inc. v. Kibby Welding, LLC*, 77 Va. App. 795, 802 (2023). The issue of whether a contract between an attorney and client gives rise to a legal duty the breach of which would support a legal malpractice claim is thus a question of law. *Cf. Smith*, 289 Va. at 253, 255 (noting that whether an attorney has *breached* their duty of care "is a question of fact 'to be decided by a fact finder, after considering testimony of expert witnesses,'" unless "reasonable minds could not differ" or "the issue of a breach is a matter of law" (quoting *Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller*, 249 Va. 54, 57 (1995))).

A retainer agreement may limit the scope of the attorney's work and thus his duty of care. For example, in *Ortiz,* the Supreme Court of Virginia concluded that a local attorney's duty of care did not extend to every decision made by the foreign lead attorney in a personal injury case because the local attorney had agreed to provide only limited services. *Id.* The local attorney had "agreed to review the pleadings, make necessary revisions, and serve as local counsel," but otherwise ceded control of the litigation to lead counsel. *Id.* Thus, although the local attorney's work was subject to "the same standard applicable to [lead counsel]'s," his duty of care "was limited to the work assigned to him by [lead counsel]." *Id.*

Still, even though "the attorney-client relationship is formed by contract," the relationship itself creates duties independent of the parties' retainer agreement. *Lyle, Siegel, Croshaw & Beale, P.C. v. Tidewater Cap. Corp.*, 249 Va. 426, 432 (1995). "[T]he duty upon the attorney to exercise reasonable care, skill, and diligence on behalf of the client arises out of the relationship of the parties, irrespective of a contract, and the attorney's breach of that duty, i.e., the appropriate standard of care, constitutes negligence." *Id.*; *see Ortiz*, 222 Va. at 128 (stating "[t]he mere absence of an express contract between [local counsel] and the clients would not enable [local counsel] to avoid liability to them for damages caused by his negligence in the discharge of his assigned duties"). Furthermore, depending on the circumstances, this duty of care may include the "duty to disclose anything known to [the attorney] which might affect his client's decision 'whether or how to act.'" *Musselman v. Willoughby Corp.*, 230 Va. 337, 343 (1985) (quoting *Owen v. Shelton*, 221 Va. 1051, 1054 (1981)); *see* Va. Rules of Pro. Conduct, Rule 1.4 (providing that a lawyer must "keep a client reasonably informed about the status of a matter," "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation," and "inform the client of facts pertinent to the matter").

Since the attorney's duties arise both from the retainer agreement and the attorney-client relationship itself, determining the scope of the duties requires examining both the terms of the agreement and the factual context of the case. As such, it follows that an attorney may have a "duty to disclose anything known to him which might affect his client's decision 'whether or how to act,'" even if the retainer agreement does not expressly outline that duty. *Musselman*, 230 Va. at 343 (quoting *Owen*, 221 Va. at 1054).

With these principles in mind, we hold that, for the purposes of the demurrer, Trent sufficiently alleged factual circumstances in which OnderLaw had a duty to timely disclose a significant change in the status of the claim as it related to their agreement, to-wit: that the device used was not the device contemplated by the parties within the retainer agreement.[7] Under that agreement, OnderLaw promised to provide legal representation, subject to a condition subsequent, in exchange for claim exclusivity. Specifically, OnderLaw was charged with determining the value of the claim against DePuy as it related to the Attune device. Within the scope of that representation, under the facts alleged, OnderLaw gained a unique understanding of the existence of Trent's claims relating to the Sigma device, the lack of an Attune device, and the likely importance of that information to Trent's decision-making. OnderLaw received "all" of Trent's medical records and told Trent an attorney would review them when evaluating her case.

---

[7] The issue whether Trent has sufficiently alleged the existence of a duty must be distinguished from the question of whether the alleged facts giving rise to that duty have been proved. *See Terry v. Irish Fleet, Inc.*, 296 Va. 129, 139 n.6 (2018) (noting, in review of a demurrer to a negligence claim, that the former issue is a question of law and the latter is a question of fact for the fact-finder). "If the allegations in a complaint are legally sufficient to establish the existence of a duty, then a jury, upon consideration of the evidence, must determine whether the duty has been performed." *Kellermann*, 278 Va. at 487 (reviewing a demurrer to a negligence claim). The scope of our discussion of the facts, then, is limited to answering the legal question of whether Trent's allegations are sufficient to establish the existence of a duty, and Trent still bears the burden of proving her claim to a jury. *See Hendrix v. Daugherty*, 249 Va. 540, 544 (1995) (noting that a plaintiff asserting a claim for legal malpractice "must plead and prove" the elements of their case, including that a relationship existed giving rise to the duty alleged).

Through those records, OnderLaw had "full knowledge of what products had been used in [Trent's] surgeries"; therefore, Trent alleged that OnderLaw knew that an Attune device was not used in Trent's surgeries and that the claim they were investigating was nonexistent.  Thus, entirely within the scope of its representation relating to the Attune device, OnderLaw was aware that (1) Trent had suffered an injury to her left knee, (2) she believed it was due to a defective device in her left knee, (3) she hoped to pursue a claim for the damages she suffered from the device, (4) that the true identity of the device in her left knee was a Sigma, not Attune, device, and (5) that she did not have a claim to be brought involving the Attune device.  Armed with this knowledge, OnderLaw sat on this information for an unreasonable amount of time to Trent's detriment.[8]

Therefore, the allegations in Trent's complaint indicate that OnderLaw did not merely discover that Trent might have other claims *in addition to* the ones she hired OnderLaw to investigate; rather, it discovered that Trent *did not* have a claim regarding the Attune device and might have other claims *instead of* the ones she hired OnderLaw to investigate.  This information constituted something "known to [OnderLaw] which might affect [Trent]'s decision 'whether or how to act'" regarding her claims.  *Musselman*, 230 Va. at 343 (quoting *Owen*, 221 Va. at 1054).  Attorneys have a duty to "reasonably infor[m a client] about the status of a matter" and "of facts pertinent to the matter."  Va. Rules of Pro. Conduct, Rule 1.4.  As such, while OnderLaw is not

_____

[8] As stated above, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff."  *Taylor*, 301 Va. at 357 (quoting *Coward*, 295 Va. at 358).  Therefore, for the purposes of the demurrer, the facts alleged are: (1) on August 6, 2018, Trent and OnderLaw executed the limited retainer agreement; (2) by September of 2018, Trent provided OnderLaw with all the records she possessed relating to her claim; (3) in July of 2019, a paralegal confirmed that OnderLaw had received Trent's medical records from her health care providers and that her case was "in line for review by an attorney"; and (4) it was not until February 2, 2021 that Trent received a letter from OnderLaw informing her that the Smith & Nephew device used in her third surgery "was not a covered device" and that "OnderLaw was not interested in pursuing her claim."  As such, accepting the factual allegations pleaded as true, OnderLaw had knowledge that Trent did not have a pursuable claim regarding the Attune device for over two years and did not inform her of that pertinent fact.

obligated to file suits against tortfeasors not contemplated in the parties' agreement, OnderLaw is obligated to inform Trent in a timely manner of pertinent facts that become known to OnderLaw that affect the viability of the claims being investigated by OnderLaw (such as the device being Sigma rather than Attune, thereby effectively ending their relationship).[9] *See, e.g.*, *Musselman*, 230 Va. at 343 (quoting *Owen*, 221 Va. at 1054); Va. Rules of Pro. Conduct, Rule 1.4. Accordingly, these alleged facts are clear, and this Court finds, as a matter of law, they are sufficient to survive the demurrer.

### III. CONCLUSION

The circuit court erred when it sustained the demurrer to the second amended complaint, because Trent adequately pleaded that OnderLaw breached a duty arising from their attorney-client relationship by failing to timely disclose pertinent facts about her claim. The circuit court's judgment is reversed, and we remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[9] *See* note 8.